[Cite as *State ex rel. Cincinnati Enquirer v. Pike Cty. Gen. Health Dist.*, 2017-Ohio-1084.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
PIKE COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, EX REL. THE CINCINNATI ENQUIRER, | : | Case No. 16CA873 |
| | : | |
| Relator, | | |
| | | |
| v. | : | DECISION AND JUDGMENT ENTRY |
| | | |
| PIKE COUNTY GENERAL HEALTH DISTRICT, ET AL., | : | |
| | | RELEASED: 3/17/2017 |
| Respondents. | : | |

APPEARANCES:

John C. Greiner and Darren W. Ford, Graydon Head & Ritchey, LLP, Cincinnati, Ohio, for relator.

Michael DeWine, Ohio Attorney General, and Sarah E. Pierce and Ryan L. Richardson, Assistant Attorneys General, Columbus, Ohio, for respondents.

Michael H. Carpenter and Caitlin E. Vetter, Carpenter Lipps & Leland, LLP, Columbus, Ohio, urging denial of the writ for amicus curiae Ohio State Coroners Association.

McGrath, J.

{¶1} Relator, The Cincinnati Enquirer, a division of Gannett Satellite Information Network, Inc. ("Enquirer"), seeks extraordinary relief in mandamus to compel the Pike County General Health District ("health district") and the Pike County Coroner ("coroner") to make the coroner's preliminary autopsy and investigative notes and findings regarding certain homicides available for inspection under the journalist exception in R.C. 313.10(D).

{¶2} First, because the requested records are not public records, as the Enquirer acknowledges, this case is governed by R.C. 313.10 instead of R.C. 149.43.

{¶3}    Second, the Enquirer is not entitled to the requested extraordinary relief against the health district because R.C. 313.10(D) imposes no duty on the district to make the requested records available for inspection.

{¶4}    Third, we reject the Enquirer's claim that the journalist exception applies to make a coroner's preliminary autopsy and investigative notes and findings subject to inspection by a journalist regardless of whether those records also contain records of a deceased individual that are confidential law enforcement investigatory records.  The plain language of 313.10 establishes that confidential law enforcement investigatory records are not subject to the journalist exception of R.C. 313.10(D) insofar as they are contained within a coroner's preliminary autopsy and investigative notes and findings.

{¶5}    Fourth, upon review of the unredacted requested records submitted by the coroner under seal, we agree with the coroner that the redactions to his preliminary autopsy and investigative notes and findings constitute confidential law enforcement investigatory records that are not subject to inspection by the Enquirer under R.C. 313.10(D).  We thus deny the Enquirer's request for extraordinary relief in mandamus against the coroner.

{¶6}    Finally, because we have denied the requested extraordinary relief in mandamus and the Enquirer does not argue in its merit briefs that it is entitled to an award of statutory damages and attorney fees, we deny its request for this additional relief as well.

I. FACTS

A. Coroner's Duties

**{¶7}** David R. Kessler, M.D., has served as the Pike County Coroner since 2005. The main duty of a coroner is to determine the manner and cause of death for every decedent who is not under the direct supervision of a physician when they die. *See* R.C. 313.09 ("The coroner shall keep a complete record of and shall fill in the cause of death on the death certificate, in all cases coming under his jurisdiction"). R.C. 313.131(B) "authorizes coroners to perform an autopsy when the coroner believes an autopsy is necessary." *Albrecht v. Treon*, 118 Ohio St.3d 348, 2008-Ohio-2617, 889 N.E.2d 120, ¶ 29. As used in R.C. Chapter 313, " 'autopsy' means the external and internal examination of the body of a deceased person, including, but not limited to, gross visual inspection and dissection of the body and its internal organs, photographic or narrative documentation of findings, microscopic, radiological, toxicological, chemical, or other laboratory analyses performed in the discretion of the examining individual upon tissues, organs, blood, other bodily fluids, gases, or any other specimens and the retention for diagnostic and documentary purposes of tissues, organs, blood, other bodily fluids, gases, or any other specimens as the examining individual considers necessary to establish and defend against challenges to the cause and manner of death of the deceased person." R.C. 313.123(A)(1).

**{¶8}** Dr. Kessler is not a pathologist so he does not personally perform autopsies or related testing. Instead, the Pike County Coroner contracts with the Hamilton County Coroner to provide autopsy services. Having an experienced pathologist perform the autopsy ensures consistency and reliability of results.

**{¶9}** On those occasions in which he examines deaths in which foul play is suspected, Dr. Kessler works very closely with law enforcement to investigate and obtain

justice for the deceased individual.  Although he often knows the manner and cause of death in these cases, he will still order an autopsy to assist in the law enforcement investigation.  Comprehensive physical and forensic examination of the body can provide important details to direct the law enforcement investigation and may provide important evidence in the case against the perpetrator.

**{¶10}**  A preliminary autopsy is generally conducted within 24 hours.  The pathologist conducts a physical examination of the body and takes blood and other samples for further testing.  The preliminary autopsy report contains at least an initial impression of the cause of death.  Final autopsy reports incorporate the full details of the physical examination and laboratory testing.  According to Bureau of Criminal Investigation ("BCI") Special Agent Michael D. Trout, preliminary autopsy reports are important to investigators because they provide critical information about the cause and manner of death, the number of injuries, and specific details about those injuries.

**{¶11}**  Once Dr. Kessler orders an autopsy, he notes on the death certificate that the case is pending investigation, which allows the deceased individual to be laid to rest.

### B. The Homicides

**{¶12}**  In April 2016, Hannah Gilley, Christopher Rhoden Jr., Christopher Rhoden Sr., Clarence Rhoden, Dana Rhoden, Gary Rhoden, Hanna Rhoden and Kenneth Rhoden were murdered in their homes in Pike County.  Dr. Kessler met with BCI investigators to coordinate the examination of the four separate crime scenes.  He quickly determined that the manner and cause of death of each victim was homicide by gunshot wound, but ordered autopsies to assist the law enforcement investigation.  The bodies

were then transported by refrigerated trailer to the Hamilton County Coroner so that a pathologist could perform the autopsies.

{¶13} Dr. Kessler reviewed the preliminary and final autopsy reports for each of the eight victims and noted the manner and cause of death for each of them.

C. Requests for Records and Responses

{¶14} On May 16, 2016, Kevin Grasha, a reporter for the Cincinnati Enquirer, sent an e-mail to Linda Murphy of the Pike County General Health District requesting under R.C. 149.43 "to view the preliminary autopsy and investigative notes and findings related to the homicides of the following:  Christopher Rhoden, Jr.[,] Hanna Rhoden[,] Hannah Gilley[,] Clarence Rhoden[,] Dana Rhoden[,] Gary Rhoden[,] Christopher Rhoden, Sr.[,] [and] Kenneth Rhoden[.]"  Murphy serves as the clerk to the Pike County Coroner. Grasha's request included his name and title and stated that his request was being made because "the information is of great public interest."

{¶15} On May 24, 2016, Grasha sent a follow-up e-mail request to Murphy after he had not received a response to his public-records request.

{¶16} By letter dated May 25, 2016, Pike County Prosecuting Attorney Robert Junk, on behalf of Murphy and the Pike County General Health District, denied Grasha's request.  Junk reasoned that based on precedent by the Supreme Court of Ohio (*State ex rel. Dayton Newspapers, Inc. v. Rauch*, 12 Ohio St.3d 100, 465 N.E.2d 458 (1984), and *State ex rel. Williams v. Cleveland*, 64 Ohio St.3d 544, 597 N.E.2d 147 (1992)), the contents of a county coroner's autopsy reports on homicide victims are exempt from disclosure as specific investigatory work product, trial preparation records, and confidential law enforcement investigatory material:

In this case, (8) members of the same extended family were killed at four (4) geographically distinct locations in a short span of time.  The killings and killer(s) escaped initial detection, and the killer(s) are still at large.  For the killing of such a large group of people to go initially undetected is a very rare occurrence in this country.  A massive investigation is ongoing into these murders.

The public already knows the name, age and manner of death of our victims. To allow access to initial technical and graphic details such as the anatomical location of the wounds and the size of the wounds would serve no public interest. Rather, access to such information by those not involved in the investigation would hinder the public's right to have a full and complete investigation. Disclosure of such information would alert the killer(s) to what information law enforcement possesses.  It would also make it virtually impossible for investigators to use these details to sort out false confessions and false claims made by any person of interest about this type of information.

Our primary, and only, interest in this matter is investigating and prosecuting the individual or individuals who perpetrated these murders. The release of the preliminary autopsy reports is not in the public interest. The public interest is best served by maintaining the integrity of the investigation into these homicides.

{¶17}  On May 26, 2016, Grasha sent an e-mail to Prosecuting Attorney Junk, with a copy to Murphy, acknowledging the prosecutor's denial of his request to view the preliminary autopsy reports, identifying himself as a journalist employed by the Enquirer, listing the Enquirer's address, and specifying that granting his request was in the best interests of the public.  This time, Grasha specified that he was requesting the records under the journalist exception in R.C. 313.10 instead of R.C. 149.43.

{¶18}  By letter dated June 9, 2016, attorney John C. Greiner, on behalf of the Cincinnati Enquirer, further responded to the prosecuting attorney that the cases he had cited were "superseded by a later enacted provision – 313.10 – of the Ohio Revised Code" and that "[t]he specific provision set out at R.C. 313.10 controls over the general provision of [R.C.] 149.43."  He requested that the prosecuting attorney contact Grasha to

"arrange a time for him to view the requested records." By letter dated June 20, 2016, the prosecutor reiterated that the preliminary autopsy reports would not be released.

{¶19} By e-mail to Prosecuting Attorney Junk on June 28, 2016, attorney Greiner claimed that he had not received a response to his letter. On June 29, 2016, the prosecutor responded that his answer was still no.

{¶20} By e-mail to Prosecuting Attorney Junk dated June 30, 2016, attorney Greiner quoted R.C. 313.10(D) and claimed that the prosecutor was violating the law. He again asked when Grasha could view the preliminary autopsy report. By e-mail dated July 1, 2016, the prosecutor responded, "No."

{¶21} Finally, by e-mail dated July 12, 2016, attorney Greiner asked Prosecuting Attorney Junk whether he was acting as legal representative for the Pike County Coroner because he needed to know for a mandamus action whether he needed to make a separate records request of the coroner to view the preliminary autopsy report prior to making the coroner a party: "If you are willing to stipulate that your communications thus far are in your role as the legal representative of the coroner, such that a separate request, prior to filing a mandamus action, is not necessary I would like to know that." By e-mail dated July 15, 2016, the prosecutor acknowledged, "I represent the coroner."

### D. Mandamus Case

{¶22} On July 21, 2016, relator, the Enquirer, filed a complaint in the Pike County Court of Appeals for a writ of mandamus to compel respondents, the health district and the coroner, to make available for inspection the requested preliminary autopsy and investigative notes and findings related to the eight homicides of the Rhoden family and Gilley. The Enquirer claimed a right to inspect the requested records under R.C.

149.43(B) and 313.10, statutory damages under R.C. 149.43(C)(1), and any other appropriate relief, including attorney fees. The health district and the coroner submitted an answer denying the Enquirer's entitlement to the requested extraordinary relief.

{¶23} In September 2016, just before the parties' evidence was submitted, the coroner made redacted copies of the preliminary and final autopsy reports for the eight homicide victims publicly available. The unredacted portions of the preliminary autopsy reports made available to the public, including media outlets, noted the cause of death of the victims, i.e., "[m]ultiple gunshot wounds to the head" for six of the victims, "[s]ingle gunshot wound to the head" for one of the victims, and "[m]ultiple gunshot wounds to the head, torso and extremity" for the remaining victim.

{¶24} The parties submitted evidence and briefs pursuant to Loc.App.R. 16. In addition, we granted leave for the Ohio State Coroners Association to file an amicus curiae brief in support of respondents.[1]

{¶25} In February 2017, after hearing oral argument, we ordered respondents to submit an unredacted version of the requested preliminary autopsy reports under seal so we could assess respondents' claim that the records are excepted from disclosure. *See State ex rel. Lanham v. DeWine*, 135 Ohio St.3d 191, 2013-Ohio-199, 985 N.E.2d 467, ¶ 22 ("the court has consistently required an in camera inspection of records before determining whether the records are excepted from disclosure"). Respondents have submitted an unredacted version of the requested preliminary autopsy reports under seal.

---

[1] Although we granted leave for the Ohio State Coroners Association to file an amicus curiae brief in this matter, which we have considered in resolving this case, we will not consider the evidence it has submitted because the association is not a party in this original action. *See, e.g., Wellington v. Mahoning Cty. Bd. of Elections*, 117 Ohio St.3d 143, 2008-Ohio-554, 882 N.E.2d 420, ¶ 53, quoting *Lakewood v. State Emp. Relations Bd.*, 66 Ohio App.3d 387, 394, 584 N.E.2d 70 (8th Dist.1990) ("In general, '[a]mici curiae are not parties to an action and may not, therefore, interject issues and claims not raised by the parties' ").

**{¶26}** This cause is now before the court for our determination on the merits.

## II. LAW AND ANALYSIS

### A. Mandamus-General Requirements

**{¶27}** In its complaint, the Enquirer sought the requested preliminary autopsy reports from two different respondents—the health district and the coroner—based on two different statutes—R.C. 149.43 and 313.10(D). In its briefs, the Enquirer now specifies that it is requesting the records based solely on R.C. 313.10(D). We must initially determine the governing statute for the Enquirer's claim.

**{¶28}** Ordinarily in a claim for public records, "[m]andamus is the appropriate remedy to compel compliance with R.C. 149.43, Ohio's Public Records Act." *State ex rel. Physicians Commt. for Responsible Medicine v. Ohio State Univ. Bd. of Trustees*, 108 Ohio St.3d 288, 2006-Ohio-903, 843 N.E.2d 174, ¶ 6; R.C. 149.43(C)(1). Unlike in other mandamus cases, " '[r]elators in public-records mandamus cases need not establish the lack of an adequate remedy in the ordinary course of law.' " *State ex rel. Data Trace Information Servs., L.L.C. v. Cuyahoga Cty. Fiscal Officer*, 131 Ohio St.3d 255, 2012-Ohio-753, 963 N.E.2d 1288, ¶ 25, quoting *State ex rel. Am. Civ. Liberties Union of Ohio, Inc. v. Cuyahoga Cty. Bd. of Commrs.*, 128 Ohio St.3d 256, 2011-Ohio-625, 943 N.E.2d 553, ¶ 24.

**{¶29}** To be certain, "[e]xcept as otherwise provided" in R.C. 313.10, "the records of the coroner who has jurisdiction over the case, including, but not limited to, the detailed descriptions of the observations written during the progress of an autopsy and the conclusions drawn from those observations filed in the office of the coroner under division (A) of section 313.13 of the Revised Code, made personally by the coroner or by anyone

acting under the coroner's direction or supervision, are public records." R.C. 313.10(A)(1).

**{¶30}** Nevertheless, the requested records at issue in this case—preliminary autopsy reports—are *not* public records. *See* R.C. 313.10(A)(2) ("Except as otherwise provided in division (D) or (E) of this section, the following records in a coroner's office are not public records: (a) Preliminary autopsy and investigative notes and findings made by the coroner or by anyone acting under the coroner's direction or supervision").

**{¶31}** And although the Enquirer invokes the journalist exception in R.C. 313.10(D) to the R.C. 313.10(A)(2)(a) exception to inspect the requested preliminary autopsy reports, it does not assert that this provision makes the requested records *public records* for purposes of R.C. 149.43. Records of the coroner that are generally excepted from the definition of public records under R.C. 313.10(A)(2) are not public records for purposes of R.C. 149.43, but are available only through other provisions of R.C. 313.10. *See State ex rel. Clay v. Cuyahoga Cty. Med. Examiners Office*, 2016-Ohio-407, 58 N.E.3d 552, ¶ 7 (8th Dist.) ("R.C. 149.43 deals with public records and is not applicable herein, because the complete autopsy file is not a public record"). Records accessible through the journalist exception are not accessible as a public record under R.C. 149.43. *See* 2007 Ohio Atty.Gen.Ops. No.2007-042 ("R.C. 149.43 contains no specific provision for a coroner to make records that are not public records available to a journalist or insurer"). Indeed, if these records were truly public records, they would be available to all members of the public—not just journalists—for copying and not simply inspection. R.C. 149.43(C).

**{¶32}** Therefore, we conclude that the Enquirer's claim is governed by R.C. 313.10 and not R.C. 149.43. As noted previously, the Enquirer does not claim otherwise now. Therefore, to be entitled to a writ of mandamus, the relator must establish a clear legal right to the requested relief, a clear legal duty on the part of the respondents to provide it, and the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Waters v. Spaeth*, 131 Ohio St.3d 55, 2012-Ohio-69, 960 N.E.2d 452, ¶ 6. The relator must prove that it is entitled to the writ by clear and convincing evidence. *Id.* at ¶ 13. "Clear and convincing evidence 'is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established.' " *State ex rel. Altman-Bates v. Pub. Emps. Retirement Bd.*, 148 Ohio St.3d 21, 2016-Ohio-3100, 68 N.E.3d 747, ¶ 37, quoting *Cross v. Ledford*, 161 Ohio St. 469, 477, 120 N.E.2d 118 (1954).

**{¶33}** The Enquirer lacks an adequate remedy in the ordinary course of law to compel respondents to comply with the journalist exception of R.C. 313.10(D). A declaratory judgment would not be an adequate remedy without a mandatory injunction ordering respondents to provide the Enquirer with the opportunity to view the unredacted preliminary autopsy reports. *See State ex rel. Am. Civ. Liberties Union of Ohio, Inc. v. Cuyahoga Cty. Bd. of Commrs.*, 128 Ohio St.3d 256, 2011-Ohio-625, 943 N.E.2d 553, ¶ 25 ("A mandatory injunction, however, is an extraordinary remedy that does not preclude a writ of mandamus").

**{¶34}** Therefore, the dispositive issue in this case is whether the Enquirer has established a clear legal right to view the requested preliminary autopsy reports under the

journalist exception of R.C. 313.10(D) and a corresponding clear legal duty on the part of

respondents to provide the newspaper with this opportunity.

### B. The Health District is not an Appropriate Respondent

{¶35}  The Enquirer seeks the writ of mandamus against the health district and

the coroner based on the journalist exception in R.C. 313.10(D), which provides:

> A journalist may submit to the coroner a written request to view preliminary
> autopsy and investigative notes and findings, suicide notes, or photographs
> of the decedent made by the coroner or by anyone acting under the
> coroner's discretion or supervision. The request shall include the journalist's
> name and title and the name and address of the journalist's employer and
> state that the granting of the request would be in the best interest of the
> public. If a journalist submits a written request to the coroner to view the
> records described in this division, the coroner shall grant the journalist's
> request. The journalist shall not copy the preliminary autopsy and
> investigative notes and findings, suicide notes, or photographs of the
> decedent.

{¶36}  The Enquirer is not entitled to a writ of mandamus to compel the health

district to provide it with the opportunity to view the preliminary autopsy and investigative

notes and findings.  R.C. 313.10(D) imposes a duty only on county coroners to comply

with a journalist's request for access; it imposes no duty on the health district.  For the

health district, the records are nonpublic under R.C. 313.10(A)(2)(a) and are not subject

to the journalist exception of R.C. 313.10(D).  The Enquirer appears to concede this in its

brief when it states that "it need only obtain a writ of mandamus against Respondent Pike

County Coroner to obtain the relief it seeks under R.C. 313.10(D)."  Therefore, we deny

the writ insofar as it seeks extraordinary relief against the health district.

### C. R.C. 149.43 and 313.10:  Precedent and Legislative Action

{¶37}  The Enquirer seeks the requested records based on R.C. 313.10(D).  The

coroner claims that the records need not be disclosed because they constitute

confidential law enforcement investigatory records, which have been historically excepted from disclosure under R.C. 149.43(A)(1)(h) and (2) and are now excepted from disclosure under R.C. 313.10(A)(2)(e).

{¶38} To better understand the Enquirer's claim, we consider the historical backdrop of public access to autopsy reports. In 1984, the Dayton Daily News instituted an action in the Supreme Court of Ohio for a writ of mandamus to compel the Hocking County Coroner to release copies of his autopsy records and reports on two homicide victims. Like the Enquirer in this case, the Dayton Daily News claimed entitlement to the autopsy reports based on R.C. 149.43 and 313.10. In a brief per curiam opinion, the Supreme Court denied the writ because it held that the requested autopsy reports on the homicide victims constituted confidential law enforcement investigatory records, i.e., they were "exempt from disclosure as specific investigatory work product as defined in R.C. 149.43(A)(2)(c)" because "[t]he autopsy is, in itself, an investigation" and "the confidentiality of the contents of an autopsy report is essential to its effective use in further investigation by law enforcement personnel." *State ex rel. Dayton Newspapers, Inc. v. Rauch*, 12 Ohio St.3d 100, 100-101, 465 N.E.2d 458 (1984).

{¶39} In so holding, the Supreme Court rejected the newspaper's argument that R.C. 313.10, which then provided that "records of the coroner * * * are public records," required disclosure of the autopsy reports of the homicide victims. *Id.* at 101. The court, with little analysis, held that R.C. 313.09, which references the county coroner's duty to keep a complete record of an autopsy report, including the detailed findings of the report, "treats the autopsy report as an item separate from the other information the coroner is required to keep as a public record." *Id.*

**{¶40}** Eight years later, in 1992, the Supreme Court of Ohio reaffirmed its holding in *Rauch* that autopsy reports of homicide victims are exempt from disclosure as confidential law enforcement investigatory records. *State ex rel. Williams v. Cleveland*, 64 Ohio St.3d 544, 547-548, 597 N.E.2d 147 (1992). In his responses to the Enquirer's request for the preliminary autopsy reports at issue here, the coroner cited *Rauch* and *Williams* and suggested that they remain the applicable precedent.

**{¶41}** However, in 2006, the General Assembly amended R.C. 313.10 to explicitly declare in subsection (A)(1) that autopsy reports are public records except as otherwise provided in that statute. The amendment further made preliminary autopsy and investigative notes and findings made by the coroner nonpublic records, but provided the journalist exception in R.C. 313.10(D) to permit journalists to view these records upon proper request. The amendment did not specify that confidential law enforcement investigatory records were excepted from disclosure under the statute. Although no court has yet determined whether the legislative amendment to R.C. 313.10 superseded the Supreme Court's holdings in *Rauch* and *Williams*, the chief law officer for the state—the Attorney General—has so concluded. *See* Ohio Attorney General, *Ohio Sunshine Laws 2016*, 67, fn. 653 (2016), http://www.ohioattorneygeneral.gov/Files/Publications-Files/Publications-for-Legal/Sunshine-Law-Publications/2015-Sunshine-Laws-Manual (accessed 3/9/2017) (noting that *Rauch* was "*superseded* by R.C. 313.10(A)" [emphasis sic.]).

**{¶42}** Because R.C. 313.10(A)(1), as amended in 2006, specifies that county coroner records are public records "[e]xcept as otherwise provided" therein, it controls over the exceptions specified in R.C. 149.43, including the one for confidential law

enforcement investigatory records. Therefore, we reject respondents' argument that the requested coroner records are exempted from disclosure as confidential law enforcement investigatory records based simply on *Rauch* and *Williams*. We agree with the Attorney General office's view in its 2016 Sunshine Laws publication insofar as it suggests that the 2006 amendment to R.C. 313.10 legislatively superseded the Supreme Court's holdings in *Rauch* and *Williams*.

{¶43} Nevertheless, as respondents and amicus curiae aptly assert,[2] this does not end the inquiry because in 2008, the General Assembly amended R.C. 313.10 again, this time to, among other things, "specify that certain records of a decedent relating to the criminal investigation of the decedent's death are not public records." Title to Sub.H.B. No. 471. As amended, R.C. 313.10(A)(2) specifies that the following records are not public records "[e]xcept as otherwise provided in division (D) or (E)":

(a) *Preliminary autopsy and investigative notes and findings made by the coroner or by anyone acting under the coroner's direction or supervision*;

(b) Photographs of a decedent made by the coroner or by anyone acting under the coroner's direction or supervision;

(c) Suicide notes;

---

[2] It is true that respondents did not rely on R.C. 313.10(A)(2)(e) to support their claim that the requested autopsy reports need not be disclosed because they contain confidential law enforcement investigatory records until they filed their merit brief. But they did not thereby waive their right to assert it after this case was filed. *See, e.g., State ex rel. Ohio Patrolmen's Benevolent Assn. v. Mentor*, 89 Ohio St.3d 440, 447, 732 N.E.2d 969 (2000) ("respondents' failure to specify the uncharged-suspect exemption [of the confidential law enforcement investigatory record exemption] as a basis for withholding the * * * investigative record until after this action was filed does not prohibit the applicability of the exemption"); *State ex rel. Plain Dealer Publishing Co. v. Cleveland*, 75 Ohio St.3d 31, 34, 661 N.E.2d 187 (1996) ("exceptions to disclosure under R.C. 149.43 are not affirmative defenses, and the city's failure to raise the exceptions it now relies on does not prohibit the court from considering them"). Although this case is governed by R.C. 313.10 rather than 149.43, we are persuaded that these cases construing R.C. 149.43 are persuasive here, where R.C. 313.10(A)(2)(e) incorporates the definition of confidential law enforcement investigatory records in R.C. 149.43. Significantly, the Enquirer does not contend that respondents waived their right to rely on R.C. 313.10(A)(2)(e) by failing to raise it earlier in their responses to its requests to view the preliminary autopsy reports or in their answer to their mandamus complaint.

(d) Medical and psychiatric records provided to the coroner, a deputy coroner, or a representative of the coroner or a deputy coroner under section 313.091 of the Revised Code;

(e) *Records of a deceased individual that are confidential law enforcement investigatory records as defined in section 149.43 of the Revised Code*;

(f) Laboratory reports generated from the analysis of physical evidence by the coroner's laboratory that is discoverable under Criminal Rule 16. in a coroner's office are not public records.

(Emphasis added.)

### D.  Confidential Law Enforcement Investigatory Records are not

### Subject to Disclosure under the Journalist Exception in R.C. 313.10(D)

**{¶44}**  The Enquirer claims that it is entitled to view the requested preliminary autopsy reports under the journalist exception of R.C. 313.10(D).[3]  Conversely, respondents claim that the coroner is entitled to withhold confidential law enforcement investigatory records under R.C. 313.10(A)(2)(e), which excepts "[r]ecords of a deceased individual that are confidential law enforcement investigatory records as defined in section 149.43 of the Revised Code" from the ambit of the coroner's public records.

**{¶45}**  The Enquirer argues that the plain language of R.C. 313.10(A)(2)(e) cannot support respondents' advocated construction that "[r]ecords of a deceased individual" means "records *about* a deceased individual" that constitute confidential law enforcement investigatory records.

**{¶46}**  "When a court interprets the meaning of a statute, '[w]ords and phrases shall be read in context and construed according to the rules of grammar and common

---

[3] The Supreme Court of Ohio recently granted an alternative writ and ordered the submission of evidence and briefs in a case that raises a comparable issue concerning the Pike County Coroner's final autopsy reports.  *See State ex rel. Gatehouse Media Ohio Holdings II, Inc. v. Pike Cty. Coroner's Office*, __ Ohio St.3d __, 2017-Ohio-573, __ N.E.3d __.  A ruling in that case is likely several months away.

usage,' R.C. 1.42, and the court must give effect to all of the statute's words." *Stolz v. J & B Steel Erectors, Inc.*, 146 Ohio St.3d 281, 2016-Ohio-1567, 55 N.E.3d 1082, ¶ 9.  One of the common-usage definitions of "of" in its prepositional form is when it is "used to indicate material, component parts, substance, or contents," i.e., "a dress of silk; an apartment of three rooms; a book of poems; a package of cheese." *Webster's New Universal Unabridged Dictionary* 1343 (2d Ed.2003).  "Of" is similarly defined as "having to do with," so that it is synonymous with "about," "concerning," and "regarding." https://www.merriam-webster.com/thesaurus/of (accessed 3/9/17).  Therefore, notwithstanding the Enquirer's arguments to the contrary, based on the plain language of R.C. 313.10(A)(2)(e), records about a deceased individual that are confidential law enforcement investigatory records are not public records.

{¶47}  R.C. 313.10(D) does not except these confidential records insofar as they are included in preliminary autopsy and investigative notes and findings made by the coroner.  Instead, R.C. 313.10(D) specifies that the journalist exception to the types of records deemed nonpublic under R.C. 313.10(A)(2) applies only to permit inspection of the first three types designated in R.C. 313.10(A)(2)(a) ("Preliminary autopsy and investigative notes and findings made by the coroner or by anyone acting under the coroner's direction or supervision"), 313.10(A)(2)(b) ("Photographs of a decedent made by the coroner or by anyone acting under the coroner's direction or supervision"), and 313.10(A)(2)(c) ("suicide notes").

{¶48}  "[U]nder the general rule of statutory construction, expressio unius est exclusio alterius, 'the expression of one or more items of class implies that those not identified are to be excluded.' "  *State ex rel. Salim v. Ayed*, 141 Ohio St.3d 129, 2014-

Ohio-4736, 22 N.E.3d 1054, ¶ 21, quoting *State v. Droste*, 83 Ohio St.3d 36, 39, 697 N.E.2d 620 (1998).  By not including the types of records deemed nonpublic under R.C. 313.10(A)(2)(d) ("Medical and psychiatric records provided to a coroner, a deputy coroner, or a representative of the coroner or a deputy coroner under section 313.091 of the Revised Code"), 313.10(A)(2)(e) ("Records of a deceased individual that are confidential law enforcement investigatory records as defined in section 149.43 of the Revised Code"), and 313.10(A)(2)(f) ("Laboratory reports generated from the analysis of physical evidence by the coroner's laboratory that is discoverable under Criminal Rule 16"), the General Assembly intended that the journalist exception in R.C. 313.10(D) not apply to them.

**{¶49}**  Moreover, when the General Assembly has intended that all of the types of records deemed nonpublic by R.C. 313.10(A)(2) be accessible to certain types of requesters, it has provided that access be given to "the full and complete records of the coroner with respect to a decedent."  *See* R.C. 313.10(C) (request by next of kin of a decedent); R.C. 313.10(E) (request by an insurer); R.C. 313.10(G)(1), defining "[f]ull and complete records of the coroner" to include all of the records specified as nonpublic records in R.C. 313.10(A)(2).  It did not provide this broad access to journalists under R.C. 313.10(D).

**{¶50}**  Finally, we are not persuaded that "[p]reliminary autopsy and investigative notes and findings made by the coroner or by anyone acting under the coroner's direction or supervision" and  "[r]ecords of a deceased individual that are confidential law enforcement investigatory records as defined in section 149.43 of the Revised Code" are discrete categories of records that can never overlap.  Consequently, some preliminary

autopsy reports may include records about a deceased individual that constitute confidential law enforcement investigatory records. *See, e.g., State ex rel. Ohio Republican Party v. Fitzgerald*, 145 Ohio St.3d 92, 2015-Ohio-5056, 47 N.E.3d 124, ¶ 34 (respondents must provide nonexempt portion of requested public records).

{¶51} Therefore, based on the plain language of the pertinent provisions of R.C. 313.10, we agree with respondents that insofar as the requested preliminary autopsy reports contained records about the homicide victims that constitute confidential law enforcement investigatory records, they constitute nonpublic records under R.C. 313.10(A)(2)(e) that are not subject to the journalist exception in R.C. 313.10(D).

E. Inspecting the Requested Records to Determine

if they are Confidential Law Enforcement Investigatory Records

{¶52} R.C. 313.10(A)(2)(e) provides that "[r]ecords of a deceased individual that are confidential law enforcement investigatory records as defined in section 149.43 of the Revised Code" are not public records. Respondents claim that the portions of the requested preliminary autopsy reports the coroner has withheld from the Enquirer contain confidential law enforcement investigatory records based on R.C. 149.43(A)(2)(c) because they pertain to a law enforcement matter and include specific investigatory work product. R.C. 149.43(A)(2) defines "[c]onfidential law enforcement investigatory record" to include "any record that pertains to a law enforcement matter of a criminal, quasi-criminal, civil, or administrative nature, but only to the extent that the release of the record would create a high probability of disclosure of any of the following: * * * (c) * * * specific investigatory work product."

**{¶53}** "For this exception to apply, respondents must therefore establish that each of the withheld [records] 'pertains to a law enforcement matter of a criminal, quasi-criminal, civil, or administrative nature' and that its release would create a high probability of disclosure of * * * specific work product." *State ex rel. Cincinnati Enquirer v. Ohio Dept. of Pub. Safety*, __ Ohio St.3d __, 2016-Ohio-7987, __ N.E.3d __, ¶ 38, quoting R.C. 149.43(A)(2)(c).

**{¶54}** Respondents have established that the withheld, redacted portions of the requested preliminary autopsy reports regarding the Rhoden/Gilley homicides pertain to a law enforcement matter of a criminal nature. Dr. Kessler stated in an affidavit that he ordered the autopsies "to assist the law enforcement investigation." (Resp. Ev., Kessler Aff., ¶ 19) This is consistent with judicial recognition that "[a] coroner's forensic examination is a classic function of the police power of the state," and "[m]any times, autopsy specimens and the results of the forensic examination are essential evidence in the prosecution of a crime." *Albrecht*, 118 Ohio St.3d 348, 2008-Ohio-2617, 889 N.E.2d 120, at ¶ 29.

**{¶55}** Respondents have also established that the release of the redacted portions of the requested records would create a high probability of disclosure of specific work product. Dr. Kessler states in an affidavit that the information in the requested preliminary autopsy reports "reflect the type of specific information used by law enforcement to investigate a homicide." In his supplemental affidavit, Dr. Kessler specified that "[t]he redactions protect information that, if released, would jeopardize and impede the active investigation into these individuals' deaths." (Resp. Ev., Kessler Supp. Aff., ¶ 4)

{¶56} According to BCI special agent Trout, preliminary autopsy reports "are very important to investigators as they provide critical information about the cause and manner of death, the number of injuries, and specific details about those injuries," and for gunshot wounds, "the preliminary autopsy reports might indicate the trajectory of the bullets, the type of bullets or weapon used, the proximity to the victim(s) when the shots were fired." Investigators use the information in preliminary autopsy reports to: (1) narrow the list of suspects; (2) rule in or out persons of interest; (3) recreate the scenario that led to the death of the victim; and (4) determine the credibility of someone claiming responsibility for the crime. Trout claims that providing details of autopsy reports to the public significantly complicates the investigation and the ability of investigators to assess the credibility of information they receive from witnesses and suspects and can hinder investigations by wasting resources. Trout has reviewed the redacted and unredacted copies of the preliminary autopsy reports relating to each of the victims and determined that the redactions relate to investigative facts known only to the investigators of the crimes and the perpetrators of them. He notes that "[t]his information includes the location and description of injuries; body decomposition at the time of autopsy; whether forensic evidence was captured; and other details about these victims that are not generally known to the public."

{¶57} Our own review of the redacted portions of the requested preliminary autopsy reports confirms the description of them by respondents' evidence. We conclude that they have properly withheld these parts of the records because they constitute confidential law enforcement investigatory records of the eight deceased homicide victims. This result comports with the Supreme Court's traditional view that "[t]he autopsy

is, in itself, an investigation" and "the confidentiality of the contents of an autopsy report is essential to its effective use in further investigation by law enforcement personnel." *Rauch*, 12 Ohio St.3d at 100-101, 465 N.E.2d 458.

**{¶58}** Therefore, we deny the Enquirer's requested extraordinary relief in mandamus against the coroner.

### F. Request for Statutory Damages and Attorney Fees

**{¶59}** In its complaint, the Enquirer also requested statutory damages under R.C. 149.43(C)(1) and an award of attorney fees. But we have determined that the Enquirer's mandamus claim is meritless. And the Enquirer includes no separate argument in either brief in support of their request. *See Data Trace*, 131 Ohio St.3d 255, 2012-Ohio-753, 963 N.E.2d 1288, at ¶ 69 (relators seeking an award of attorney fees and statutory damages in public records case waived claim by including no argument regarding request in their merit briefs) In fact, the newspaper abandoned its claim under R.C. 149.43 in its brief. We deny the Enquirer's request for statutory damages and attorney fees.

### III. CONCLUSION

**{¶60}** The Enquirer has established neither a clear legal right to view the requested preliminary autopsy reports by the coroner concerning the Rhoden/Gilley homicides nor a clear legal duty on the part of the coroner or the health district to provide it with the opportunity to view them under the journalist exception of R.C. 303.10(D). The redacted portions of the requested records are excepted from disclosure as records of deceased individuals that are confidential law enforcement investigatory records under

R.C. 313.10(A)(2)(e).  Based on the foregoing, we deny the writ and the request for

statutory damages and attorney fees.

Brogan, J.* & Handwork, J.** Concur in Judgment and Opinion.

                                                                    WRIT DENIED.


                            FOR THE COURT


                            _____
                            Patrick M. McGrath***
                            Judge


                            **NOTICE**

   **This document constitutes a final judgment entry and the time period for appeal commences from the date of filing with the clerk.**

   **Pursuant to Civ.R. 58(B), the clerk is ORDERED to serve notice of the judgment and its date of entry upon the journal on all parties who are not in default for failure to appear.  Within three (3) days after journalization of this entry, the clerk is required to serve notice of the judgment pursuant to Civ.R. 5(B), and shall note the service in the appearance docket.**


* James A. Brogan, retired judge of the Second Appellate District, sitting by assignment of The Supreme Court of Ohio in the Fourth Appellate District.

** Peter M. Handwork, retired judge of the Sixth Appellate District, sitting by assignment of The Supreme Court of Ohio in the Fourth Appellate District.

*** Patrick M. McGrath, retired judge of the Tenth Appellant District, sitting by assignment of The Supreme Court of Ohio in the Fourth Appellate District.