[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Cincinnati Enquirer v. Pike Cty. Gen. Health Dist..*, Slip Opinion No. 2018-Ohio-3721.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2018-OHIO-3721

THE STATE EX REL. CINCINNATI ENQUIRER, APPELLANT, *v*. PIKE COUNTY GENERAL HEALTH DISTRICT ET AL.; PIKE COUNTY MEDICAL EXAMINER AND CORONER, APPELLEE.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Cincinnati Enquirer v. Pike Cty. Gen. Health Dist..*, Slip Opinion No. 2018-Ohio-3721.]

*Mandamus—Coroner's records-statute, R.C. 313.10—The coroner shall grant a journalist's proper request to review preliminary autopsy and investigative notes made by the coroner—Writ granted.*

(No. 2017-0431—Submitted February 27, 2018—Decided September 19, 2018.)

APPEAL from the Court of Appeals for Pike County, No. 16CA873, 2017-Ohio-1084.

_____

**Per Curiam.**

{¶ 1} The Cincinnati Enquirer appeals the judgment of the Fourth District Court of Appeals denying its request for a writ of mandamus and requests this court

to schedule oral argument.  For the reasons set forth herein, we deny the motion for oral argument and reverse the judgment of the court of appeals.

*Background*

**{¶ 2}** This case arises out of the murders of eight members of the Rhoden and Gilley families in Pike County in April 2016.  On May 16, 2016, Kevin Grasha, a Cincinnati Enquirer reporter, contacted the Pike County General Health District, asking to view the preliminary autopsy and investigative notes and findings relating to the homicides of Christopher Rhoden Sr., Christopher Rhoden Jr., Dana Rhoden, Clarence Rhoden, Hanna Rhoden, Hannah Gilley, Kenneth Rhoden, and Gary Rhoden.  Grasha made his request pursuant to R.C. 149.43, the Ohio Public Records Act.  Grasha made a second request on May 24.

**{¶ 3}** On May 25, 2016, the Pike County prosecuting attorney, in his role as counsel for the Pike County General Health District and appellee, Pike County's medical examiner and coroner ("coroner"), denied the request to view the records.

**{¶ 4}** During further exchanges, counsel for the Enquirer invoked R.C. 313.10(D), which provides that upon a request in proper form, journalists must be given access to review, but not copy, the preliminary autopsy reports of a county coroner.  The prosecuting attorney again denied the Enquirer access to the records.

**{¶ 5}** Naming the health district and coroner as respondents, in July, the Enquirer filed a complaint for a writ of mandamus asking the Fourth District Court of Appeals to order the respondents to make the records available pursuant to R.C. 149.43(B) and 313.10.  The Enquirer also asked for statutory damages and attorney fees.

**{¶ 6}** In September 2016, the coroner released heavily redacted versions of the preliminary autopsy reports to the public, calling the reports " 'confidential law enforcement investigatory records' under R.C. 313.10(A)(2)(e) and R.C. 149.43" (which states that confidential law-enforcement investigatory records are not public records), *see* R.C. 149.43(A)(1)(h) and (2). In February 2017, the court of appeals

ordered the health district and coroner to submit the unredacted preliminary autopsy reports to it under seal for in camera inspection.

{¶ 7} On March 17, 2017, the court of appeals denied the Enquirer's request for a writ of mandamus. 4th Dist. Pike No. 16CA873, 2017-Ohio-1084. The court of appeals first held that no writ could be issued against the Pike County General Health District, as R.C. 313.10(D) applies only to coroners. *Id.* at ¶ 36. (The Enquirer has not appealed this aspect of the decision.) After reviewing the unredacted portions of the final autopsy reports, the court of appeals held that they were properly withheld because they constituted confidential law-enforcement investigatory records of the eight decedents and therefore were not subject to the journalist exception in R.C. 313.10(D). *Id.* at ¶ 5, 51, and 57.

{¶ 8} The Enquirer appealed and filed an unopposed motion for oral argument.

*The motion for oral argument*

{¶ 9} Oral argument in appeals as of right is discretionary. S.Ct.Prac.R. 17.02(A). When deciding whether to hear oral argument, we consider whether the case involves a matter of great public importance, complex issues of law or fact, a substantial constitutional issue, or a conflict among the courts of appeals. *State ex rel. BF Goodrich Co., Specialty Chems. Div. v. Indus. Comm.*, 148 Ohio St.3d 212, 2016-Ohio-7988, 69 N.E.3d 728, ¶ 23. This case does involve a matter of great public importance: whether journalists may review, and presumably report on, preliminary autopsy reports in open homicide cases. But the remaining factors are not present: the case presents no constitutional question or division among the intermediate appellate courts; the relevant facts are few and uncontested; and the legal question in the case is a simple question of statutory interpretation. Oral argument would likely offer little new information for the court's consideration.

{¶ 10} We therefore deny the request for oral argument.

*Legal analysis*

{¶ 11} The Enquirer seeks to review certain documents in the custody of the coroner's office. The records of a county coroner's office are governed by R.C. 313.10. As the court of appeals correctly recognized, this case does not arise under the Ohio Public Records Act. 2017-Ohio-1084 at ¶ 32 ("we conclude that the Enquirer's claim is governed by R.C. 313.10 and not R.C. 149.43").

{¶ 12} To be entitled to a writ of mandamus, the Enquirer must establish, by clear and convincing evidence, (1) a clear legal right to the requested relief, (2) a clear legal duty on the part of the coroner to provide it, and (3) the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Love v. O'Donnell*, 150 Ohio St.3d 378, 2017-Ohio-5659, 81 N.E.3d 1250, ¶ 3. Mandamus is the appropriate remedy to compel compliance with the Ohio Public Records Act, R.C. 149.43, and a relator need not demonstrate the absence of an adequate remedy in the ordinary course of the law. *State ex rel. Caster v. Columbus*, 151 Ohio St.3d 425, 2016-Ohio-8394, 89 N.E.3d 598, ¶ 15-16. Although the demand for records in this case arises under R.C. 313.10, not R.C. 149.43, the same rule applies. *See State ex rel. Clay v. Cuyahoga Cty. Med. Examiner's Office*, 152 Ohio St.3d 163, 2017-Ohio-8714, 94 N.E.3d 498, ¶ 33 (in a case involving records of a coroner, the parties did not dispute that the requesting party had no adequate remedy in the ordinary course of the law).

{¶ 13} The coroner's-records statute states:

Except as otherwise provided in this section, the records of the coroner who has jurisdiction over the case, including, but not limited to, the detailed descriptions of the observations written during the progress of an autopsy and the conclusions drawn from those observations filed in the office of the coroner * * *, made

4

personally by the coroner or by anyone acting under the coroner's direction or supervision, are public records.

R.C. 313.10(A)(1). R.C. 313.10(B) adds, "All records in the coroner's office that are public records are open to inspection by the public, and any person may receive a copy of any such record or part of it upon demand in writing * * *."

{¶ 14} However, the statute expressly exempts certain categories of documents from the definition of public records.

Except as provided in division (D) or (E) of this section, the following records in a coroner's office are not public records:

(a) Preliminary autopsy and investigative notes and findings made by the coroner or by anyone acting under the coroner's direction or supervision;

* * *

(e) Records of a deceased individual that are confidential law enforcement investigatory records as defined in section 149.43 of the Revised Code.

R.C. 313.10(A)(2). R.C. 313.10(D), referred to above, carves out an exception:

A journalist may submit to the coroner a written request to view preliminary autopsy and investigative notes and findings, suicide notes, or photographs of the decedent made by the coroner or by anyone acting under the coroner's discretion or supervision. * * * If a journalist submits a written request to the coroner to view the records described in this division, the coroner shall grant the journalist's request. The journalist shall not copy the preliminary

autopsy and investigative notes and findings, suicide notes, or photographs of the decedent.

The Enquirer contends that the plain language of R.C. 313.10(D) creates an absolute duty on the part of the coroner to permit journalists to inspect preliminary autopsy reports upon proper request.

{¶ 15} The court of appeals disagreed. That court began by interpreting the statutory language to conclude that "records about a deceased individual that are confidential law enforcement investigatory records are not public records." 2017-Ohio-1084 at ¶ 46. The Enquirer does not dispute this proposition, and indeed we confirmed this holding in *State ex rel. Cincinnati Enquirer v. Pike Cty. Coroner's Office*, 153 Ohio St.3d 63, 2017-Ohio-8988, 101 N.E.3d 396, ¶ 44. The question in the case is not whether the preliminary autopsy reports are public records (they are not), but whether journalists are entitled to see them nonetheless.

{¶ 16} In declining to issue the writ, the court of appeals observed that R.C. 313.10(A)(2), the provision enumerating the coroner documents that are *not* public records, lists six categories of documents:

(a) Preliminary autopsy and investigative notes and findings made by the coroner or by anyone acting under the coroner's direction or supervision;

(b) Photographs of a decedent made by the coroner or by anyone acting under the coroner's direction or supervision;

(c) Suicide notes;

(d) Medical and psychiatric records provided to the coroner, a deputy coroner, or a representative of the coroner or a deputy coroner * * *;

> (e) Records of a deceased individual that are confidential law enforcement investigatory records as defined in section 149.43 of the Revised Code.
>
> (f) Laboratory reports generated from the analysis of physical evidence by the coroner's laboratory that is discoverable under Criminal Rule 16.

{¶ 17} The court next noted that the specific language of the journalist privilege, R.C. 313.10(D), allows a journalist to view only "preliminary autopsy and investigative notes and findings, suicide notes, or photographs of the decedent made by the coroner or by anyone acting under the coroner's discretion or supervision." Applying the general rule of statutory construction expressio unius est exclusio alterius (" 'the expression of one or more items of a class implies that those not identified are to be excluded,' " quoting *State v. Droste,* 83 Ohio St.3d 36, 39, 697 N.E.2d 620 (1998) ), the court concluded that R.C. 313.10(D) does not authorize the inspection of confidential law enforcement records "insofar as they are included in preliminary autopsy and investigative notes and findings made by the coroner." 2017-Ohio-1084 at ¶ 47-48.

{¶ 18} The court bolstered its conclusion by examining two other provisions of the coroner's statute that permit designated persons to obtain nonpublic coroner records. The coroner is required, upon request, to provide "a copy of the full and complete records of the coroner" to the next of kin of the decedent, R.C. 313.10(C)(1), and an insurer, R.C. 313.10(E)(1) and (2). Had the General Assembly intended journalists to have unfettered access to nonpublic records of the coroner, the court of appeals concluded, it would have used the same broad language in the journalist provision, but it did not. *Id*. at ¶ 49.

{¶ 19} The court of appeals examined the specific redacted materials sought by the Enquirer and found them to contain confidential law-enforcement records.

It then interpreted R.C. 149.43(A)(2)(c) (confidential law-enforcement records that will likely lead to the disclosure of specific investigatory work product are not public records) as circumscribing R.C. 313.10(D). 2017-Ohio-1084 at ¶ 52. Therefore, it declined to issue the writ of mandamus. *Id*. at ¶ 57-58.

{¶ 20} In our judgment, the court of appeals' analysis is flawed. When construing the language of a statute, a court begins by examining the intent of the General Assembly. *State ex rel. Repeal the Lorain Cty. Permissive Sales Tax Commt. v. Lorain Cty. Bd. of Elections*, 151 Ohio St.3d 247, 2017-Ohio-7648, 87 N.E.3d 1234, ¶ 14. The intent of the General Assembly "is primarily determined from the language of the statute itself." *Stewart v. Trumbull Cty. Bd. of Elections*, 34 Ohio St.2d 129, 130, 296 N.E.2d 676 (1973). And when a statute is unambiguous, the court must apply it as written. *State ex rel. Ohio Presbyterian Retirement Servs., Inc. v. Indus. Comm.*, 151 Ohio St.3d 92, 2017-Ohio-7577, 86 N.E.3d 294, ¶ 19.

{¶ 21} The language of R.C. 313.10(D) is clear: if a journalist submits a proper request to review preliminary autopsy and investigative notes and findings, suicide notes, or photographs of the decedent made by the coroner, the coroner "shall" grant the request. The language of R.C. 313.10(D) does not condition that right of access in any way, and the right of access certainly does not depend on whether the records in question are confidential law-enforcement records. Indeed, the statute accounts for the possibility that the materials might be sensitive by denying journalists the ability to copy the materials.

{¶ 22} The court of appeals disregarded the plain language of the statute and decided instead to rely upon a canon of statutory construction. However, when the words of a statute are unambiguous, a court has "no cause to apply the rules of statutory construction." *Clay*, 152 Ohio St.3d 163, 2017-Ohio-8714, 94 N.E.3d 498, at ¶ 16-17 (declining to interpret an unambiguous statute by applying the in pari materia rule of statutory construction); *accord Hulsmeyer v. Hospice of*

*Southwest Ohio, Inc.*, 142 Ohio St.2d 236, 2014-Ohio-5511, 29 N.E.3d 903, ¶ 22-23.  This court has long held that the doctrine of expressio unius est exclusio alterius "is an aid in interpreting *ambiguous* statutes" and should not be applied to defeat legislative intent when there is no ambiguity.  (Emphasis added.)  *State ex rel. Wilson v. Preston*, 173 Ohio St. 203, 209, 181 N.E.2d 31 (1962).

**{¶ 23}** Alternatively, the coroner contends that the documents at issue are subject to the terms of both the coroner's statute *and* the Public Records Act and are exempt from disclosure by the latter.  However, we rejected this precise argument in *Clay*.  *Id.* at ¶ 19-20.  Moreover, the coroner's argument would swallow the journalist privilege altogether: the function of R.C. 313.10(D) is to give journalists limited access to records that *are not public records*.  If a journalist could review only autopsy reports that *are* public records, then he would have no greater access than the general public, and R.C. 313.10(D) would be a dead letter.

**{¶ 24}** Based on the plain language of R.C. 313.10(D), we reverse the judgment of the court of appeals and grant a writ of mandamus.

Judgment reversed
and writ granted.

O'CONNOR, C.J., and O'DONNELL, FISCHER, and DEGENARO, JJ., concur.

KENNEDY, J., concurs in judgment only.

FRENCH and DEWINE, JJ., not participating.

_____

Graydon Head & Ritchey, L.L.P., John C. Greiner, and Darren W. Ford, for appellant.

Michael DeWine, Attorney General, and Sarah E. Pierce, Assistant Attorney General, for appellee.

_____