[Cite as *Doe v. Ohio State Univ.*, 2024-Ohio-5891.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| John Doe, | : | |
| Requester-Appellant/ Cross-Appellee, | : | No. 24AP-161 |
| | : | (Ct. of Cl. No. 2023-00498PQ) |
| v. | | |
| | : | (REGULAR CALENDAR) |
| The Ohio State University, | | |
| | : | |
| Respondent-Appellee/ Cross-Appellant. | : | |

D E C I S I O N

Rendered on December 17, 2024

**On brief:** *Strip, Hoppers, Leithart, McGrath & Terlecky Co., L.P.A., Kenneth R. Goldberg*, and *Loni R. Sammons*, for John Doe. **Argued:** *Loni R. Sammons.*

**On brief:** *Dave Yost*, Attorney General, *Bridget C. Coontz, T. Elliot Gaiser*, and *Jana M. Bosch*, for The Ohio State University. **Argued:** *Jana M. Bosch.*

APPEAL from the Court of Claims of Ohio

JAMISON, J.

{¶ 1} Requester-appellant, John Doe, appeals a judgment of the Court of Claims of Ohio that found respondent-appellee, The Ohio State University ("Ohio State"), violated Ohio's Public Records Act, R.C. 149.43, by failing to properly respond to records requests made by Doe. Ohio State cross-appeals from the same judgment. For the following reasons, we affirm the Court of Claims' judgment in part and reverse it in part.

## I.  FACTS AND PROCEDURAL HISTORY

{¶ 2}   Doe, a ticket reseller, submitted six records requests to Ohio State pursuant to the Public Records Act between March 24 and July 3, 2023.  Although Ohio State provided records in response to the first two requests, it did not respond to the other requests.

{¶ 3}   In the first request, made on March 24, 2023 and denominated by Ohio State as request 23-0721, Doe asked for the names and addresses of Ohio State faculty and staff members who had purchased 2022 Ohio State football season tickets through their employee benefits.  On May 3, 2023, Ohio State responded to Doe's request with a spreadsheet containing the names of the relevant faculty and staff members and their work email addresses.  Ohio State notified Doe that the spreadsheet omitted the employees' home mailing addresses and personal email addresses because neither home mailing addresses nor personal email addresses constituted records under R.C. 149.011(G).  Doe then supplemented his first request by asking for employees' home mailing addresses when the home mailing address was the same as the employees' work mailing address and for employees' personal email addresses when the email address was a benefit of state employment.  Ohio State did not provide any additional records in response to the supplemental request.

{¶ 4}   In the second request, made on May 4, 2023 and denominated by Ohio State as 23-0835, Doe asked for the names and email addresses of the individuals who had received an email dated April 3, 2023 from Ohio State University Athletics about 2023 football seat selection.  On June 9, 2023, Ohio State provided records responsive to Doe's requests, but it again withheld employees' home mailing addresses and personal email addresses.

{¶ 5}   In a third request, made on June 14, 2023 and denominated by Ohio State as 23-0928, Doe asked for the work email addresses for certain named faculty and staff members.[1]  In an email dated June 29, 2023, Ohio State responded that it had no records

---

[1] Although Doe included this request in his public-records-access complaint and Ohio State provided documentation regarding this request to the Court of Claims, the special master ignored this request in his report and recommendation. The Court of Claims adopted the special master's report and recommendation without modification. Therefore, when ordering Ohio State to produce records responsive to Doe's public records requests, the Court of Claims omitted this request from the list of requests Ohio State must respond to. Doe did not object to or appeal this omission. We thus include this request in our decision only to provide a complete rendition of the facts.

responsive to Doe's third request. Ohio State explained that, given the way it stored information, it would have to create a new record to respond to Doe's request, which the law did not require.

{¶ 6} In a fourth request, made on June 27, 2023 and denominated by Ohio State as 23-0959, Doe asked for the names, mailing addresses, and email addresses of all donors to Ohio State through the President's Club or the Buckeye Club who were 2023 Ohio State football season ticket holders. Beyond acknowledging receipt of this request, Ohio State did not respond to the request.

{¶ 7} In the fifth request, made on June 28, 2023 and denominated by Ohio State as 23-0961, Doe asked for: (1) the names and mailing addresses of all faculty and staff members who received 2019 Ohio State football season tickets via USPS first class mail, (2) the names and email addresses of all faculty and staff members who had season tickets for the 2022-23 Ohio State men's basketball season, and (3) the names, mailing addresses, and email addresses of all donors who had season tickets for the 2022-23 Ohio State men's basketball season. Beyond acknowledging receipt of this request, Ohio State did not respond to the request.

{¶ 8} In the sixth request, made on July 3, 2023 and denominated by Ohio State as 24-0004, Doe asked for: (1) "[c]omplete user information for all *faculty and staff* season ticket holders with a Ticketmaster Account Manager for 2023 Ohio State Football Season," and (2) "[c]omplete user information for all *individual and entities* that are donors and have season ticket holder Ticketmaster Account Manager for 2023 Ohio State Football Season." (Emphasis sic.) (Compl. at 19, July 3, 2023 email regarding "Public Records [R]equest July 3, 2023".) The request clarified that by asking for "user information" Doe wanted names, mailing addresses, email addresses, and phone numbers for each individual. *Id.* Doe also requested the section, row, and seat information for all 2023 Ohio State football season tickets purchased by faculty and staff members and donors. Beyond acknowledging receipt of this request, Ohio State did not respond to this request.

{¶ 9} On July 25, 2023, Doe filed a complaint in the Court of Claims against Ohio State pursuant to R.C. 2743.75. The complaint alleged that Ohio State had denied Doe access to public records in violation of R.C. 149.43(B). The Court of Claims assigned the case to a special master, who referred the case to mediation. After an unsuccessful

mediation, Ohio State filed a motion to dismiss. In relevant part, Ohio State argued that dismissal was warranted because the materials Doe sought were not public records as they were not "records" as defined in R.C. 149.011(G). (Nov. 16, 2023 Mot. to Dismiss at 16.) Ohio State also argued that portions of the records pertaining to students were exempted from disclosure by the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. 1232g.

{¶ 10} In a report and recommendation issued December 21, 2023, the special master recommended that the Court of Claims order Ohio State to produce copies of all records responsive to Doe's requests, with certain redactions. In reaching this recommendation, the special master first had to determine whether the materials Doe requested qualified as records under R.C. 149.011(G), which defines "[r]ecords" as "any document, device, or item * * * created or received by or coming under the jurisdiction of any public office of the state * * *, which serves to document the organization, functions, policies, decisions, procedures, operations, or other activities of the office." (Dec. 21, 2023 Report & Recommendation at 2.) The parties disputed whether the materials at issue "serve[d] to document the organization, functions, policies, decisions, procedures, operations, or other activities" of Ohio State. *Id.*

{¶ 11} The materials at issue were multiple spreadsheets collecting information about season ticketholders, including the ticketholders' names, mailing and email addresses, seat locations, and phone numbers. The special master determined that most of the information in the spreadsheets were records because that information documented Ohio State's contracts with the season ticketholders. According to the special master, the ticketholders' email addresses were records because they documented how Ohio State communicated with the ticketholders. Likewise, the ticketholders' mobile phone numbers also documented how Ohio State communicated with the ticketholders, as well as provided the means to transfer mobile tickets. The special master, however, found that the ticketholders' physical addresses had no connection to their contracts with Ohio State as all interactions between Ohio State and the ticketholders were electronic. Consequently, the special master concluded that the ticketholders' physical addresses did not constitute records, so Ohio State did not have to disclose that information.

{¶ 12} With regard to records pertaining to students, the special master determined that FERPA precluded Ohio State from providing Doe with any records containing information relating to student season ticket holders. Finally, the special master found that Doe was entitled to recover his filing fee and costs, but he was not entitled to statutory damages because that type of relief was not available under R.C. 2743.75.

{¶ 13} Both Doe and Ohio State objected to the special master's report and recommendation. In a decision and entry dated January 30, 2024, the Court of Claims overruled all the objections and adopted the special master's report and recommendation.

## II. ASSIGNMENTS OF ERROR

{¶ 14} Both Doe and Ohio State appeal the Court of Claims' January 30, 2024 judgment. Doe assigns the following errors for our review:

> 1. The trial court erred in holding that ticketholders' physical addresses do not meet the definition of "records" under R.C. § 149.011(G).
>
> 2. The trial court erred in holding that Requester-Appellant may not recover statutory damages pursuant to R.C. § 149.43.

{¶ 15} On cross-appeal, Ohio State assigns the following errors for our review:

> 1. The trial court erred when it held that employee and donor ticket purchaser email addresses are "records" that must be disclosed under Ohio's Public Records Act.
>
> 2. The trial court erred when it held that the employee and donor ticket purchaser phone numbers are "records" that must be disclosed under Ohio's Public Records Act.

## III. LEGAL ANALYSIS

### A. Do Season Ticketholders' Mailing Addresses, Email Addresses, and Phone Numbers Qualify as "Records" Under R.C. 149.011(G)?

{¶ 16} Doe's first assignment of error and Ohio State's two cross-assignments of error are related. All three assignments of error challenge the Court of Claims' decisions regarding whether certain materials satisfied the statutory definition of "records." Given the correlation between the three assignments of error, we will consider them together.

{¶ 17} Ohio's Public Records Act requires a public office to promptly make copies of public records available to any person upon request. R.C. 149.43(B)(1). Courts construe the Public Records Act liberally in favor of broad access to public records and resolve any

doubt in favor of disclosure. *State ex rel. Cable News Network, Inc. v. Bellbrook-Sugarcreek Local Schools*, 163 Ohio St.3d 314, 2020-Ohio-5149, ¶ 8.

{¶ 18} A person aggrieved by a denial of access to public records in violation of R.C. 149.43(B) may either file a mandamus complaint, pursuant to R.C. 149.43(C)(1), or a public-records-access complaint in the Court of Claims pursuant to R.C. 2743.75. R.C. 149.43(C)(1); 2743.75(C)(1). The standards applicable to proceedings under R.C. 2743.75 in the Court of Claims are consistent with the standards applicable to mandamus-enforcement actions. *Welsh-Huggins v. Jefferson Cty. Prosecutor's Office*, 163 Ohio St.3d 337, 2020-Ohio-5371, ¶ 32. Thus, in a R.C. 2743.75 proceeding, the requester carries the burden of production to plead and prove facts showing that it "sought an identifiable public record pursuant to R.C. 149.43(B)(1) and that the public office or records custodian did not make the record available." *Id.* at ¶ 33. Additionally, the burden of persuasion is on the requester to establish its entitlement to relief by clear and convincing evidence. *Viola v. Cuyahoga Cty. Prosecutor's Office*, 8th Dist. No. 110315, 2021-Ohio-4210, ¶ 16; *accord Viola v. Ohio Atty. Gen.'s Office*, 10th Dist. No. 21AP-126, 2021-Ohio-3828, ¶ 16-17 (applying the clear and convincing standard); *Hurt v. Liberty Twp.*, 5th Dist. No. 17 CAI 05 0031, 2017-Ohio-7820, ¶ 30 ("To promote consistent application of the public records law, we shall review a case brought pursuant to R.C. 2743.75 under the standard of proof required in cases brought under R.C. 149.43(C)(1)(b).").

{¶ 19} Whether material qualifies as a record under R.C. 149.011(G) presents a mixed question of law and fact. When presented with such an issue, an appellate court "will independently review the legal question de novo but will defer to the trial court's underlying factual findings, reviewing them only for clear error." *Welsh-Huggins* at ¶ 37.

{¶ 20} "Public record[s]" are "records kept by any public office." R.C. 149.43(A)(1). "Records" are "any document, device, or item * * * created or received by or coming under the jurisdiction of any public office * * *, which serves to document the organization, functions, policies, decisions, procedures, operations, or other activities of the office." R.C. 149.011(G). Consequently, to prove requested materials are records for the purposes of R.C. 149.011(G) and 149.43, a requester must establish that the materials are: (1) documents, devices, or items; (2) created or received by or coming under the jurisdiction of a public office; (3) which serve to document the organization, functions, policies, decisions,

procedures, operations, or other activities of the office. *State ex rel. Dispatch Printing Co. v. Johnson*, 106 Ohio St.3d 160, 2005-Ohio-4384, ¶ 19. If a requester fails to prove any of these three requirements, then the requested materials are not records and are not subject to disclosure under the Public Records Act. *Id.*; *accord State ex rel. Beacon Journal Publishing Co. v. Bond*, 98 Ohio St.3d 146, 2002-Ohio-7117, ¶ 9 ("To the extent that an item does not serve to document the activities of a public office, it is not a public record and need not be disclosed.").

{¶ 21} In this case, we must consider whether personal information—specifically, season ticketholders' mailing addresses, email addresses, and phone numbers—held by Ohio State falls within the statutory definition of "record." The parties do not dispute the personal information at issue satisfies the first two requirements of a record. We, therefore, must determine whether the requested personal information meets the last requirement: it must serve to document the organization, functions, policies, decisions, procedures, operations, or other activities of Ohio State. The Supreme Court of Ohio has addressed whether personal information meets the third requirement of a record in a series of cases, so we begin our analysis by reviewing those cases.

{¶ 22} In *State ex rel. McCleary v. Roberts*, 88 Ohio St.3d 365 (2000), the City of Columbus implemented a photo identification program where the Recreation and Parks Department ("Department") collected personal information about the children who used the Department's pools and recreation centers. Holding that such information was not subject to disclosure, the Supreme Court stated that, "[s]tanding alone, that information, *i.e.*, names of children, home addresses, names of parents and guardians, and medical information, does nothing to document any aspect of the City's Recreation and Parks Department." *Id.* at 368. The Supreme Court then cited precedent holding that an agency has an obligation to release information that sheds light on the agency's performance of its statutory duties, but no obligation to disclose personal information about individuals that accumulates in government files that reveals little or nothing about the agency's own conduct. Moreover, the Supreme Court recognized prior precedent that exempted personal information from disclosure where it did "nothing to further the public's knowledge of the internal workings of government agencies" because, in those cases, "the release of the

information to any member of the public did not serve the important public interest of ensuring government accountability." *Id*. at 369.

{¶ 23} Applying the reasoning of the cited precedent, the Supreme Court found the requested personal information did not constitute a "record" as defined in R.C. 149.011(G) because that information would not "provide any further insight into the operation of the Department's photo identification program than that already available." *Id.* The court noted that the Department had already made public "when the [photo identification] program was initiated, the purpose of the program, how the program operate[d], and the effect it [] had in making the City's recreational facilities safer and more manageable." *Id.* The court also found that disclosing the requested personal information would do nothing to ensure government accountability.

{¶ 24} In *Bond*, 98 Ohio St.3d 146, 2002-Ohio-7117, the Supreme Court concluded that jurors' names and mailing addresses did not fit the statutory definition of a "record." The jurors' personal information failed to satisfy the third requirement of a record because disclosure of the information did "little to ensure the accountability of government or shed light on the trial court's performance of its statutory duties." *Id*. at ¶ 11. Relying on the reasoning of *McCleary*, the Supreme Court held that "disclosure of information about private citizens is not required when such information ' "reveals little or nothing about an agency's own conduct" ' and ' "would do nothing to further the purposes of the Act." ' " *Bond* at ¶ 11, quoting *McCleary* at 368, 369, quoting *United States Dept. of Justice v. Reporters Commt. for Freedom of Press*, 489 U.S. 749, 780 (1989).

{¶ 25} In *Johnson*, 106 Ohio St.3d 160, 2005-Ohio-4384, the Supreme Court addressed whether state employees' home mailing addresses constituted records for purposes of R.C. 149.011(G). The Supreme Court held the addresses were not records because the requester did not prove the employees' addresses "create[d] a written record of the structure, duties, general management principles, agency determinations, specific methods, processes, or other acts of the state agencies." *Id*. at ¶ 22, 25. The Supreme Court concluded, "[a]t best, home addresses represent contact information used as a matter of administrative convenience." *Id*. at ¶ 25.

{¶ 26} The Supreme Court also determined "[d]isclosure of home addresses of state employees 'would reveal little or nothing about the employing agencies or their activities.' "

*Id.* at ¶ 27, quoting *United States Dept. of Defense v. Fed. Labor Relations Auth.*, 510 U.S. 487, 497 (1994). Consequently, the Supreme Court found, "[a]s with the requested records in *McCleary* and *Bond*, disclosure of state-employee home addresses would not further the purposes of R.C. 149.43 -- i.e., disclosure would not help to monitor the conduct of state government." *Johnson* at ¶ 27.

{¶ 27} In *State ex rel. O'Shea & Assocs. Co., L.P.A. v. Cuyahoga Metro. Hous. Auth.*, 131 Ohio St.3d 149, 2012-Ohio-115, the Supreme Court considered whether the Public Records Act mandated the disclosure of questionnaires and medical releases completed by residents of dwellings owned and operated by Cuyahoga Metropolitan Housing Authority ("CMHA"). CMHA asked residents to complete questionnaires and provide medical releases when a resident reported elevated lead levels in their blood or their children's blood. The questionnaire asked for personal information, such as the name, address, and telephone number of the resident, and the names and birth dates of the resident's children, as well as information designed to determine when and how lead exposure occurred. The medical releases also requested personal identifying information of the residents and the residents' children.

{¶ 28} When considering whether the questionnaires and releases met the third requirement of a record under R.C. 149.011(G), the Supreme Court parsed the information contained in the documents. The Supreme Court concluded that some of the information in the questionnaires and medical releases provided insight as to whether CMHA was performing its statutory duty to provide safe and sanitary housing. The Supreme Court stated:

> [T]he residence addresses and the substantive information concerning general, nonidentifying information, lead-based paint and lead-contaminated dust hazards, water-lead hazards, lead-in-soil hazards, occupational or hobby hazards, and child-behavior risk factors would all be pertinent to an analysis of whether CMHA took steps to provide safe housing in specific CMHA dwellings with possible lead hazards. Release of this information would help hold CMHA accountable for its statutory duty of reducing or eliminating any lead-related hazard in its residences and would reveal the agency's success or failure in doing so, without requiring release of much of the residents' personal information.

Id. at ¶ 34. Therefore, the residence addresses and information related to lead exposure met the third requirement of a record, and those items were subject to disclosure under the Public Records Act.

{¶ 29} However, the Supreme Court held that personal identifying information, including the names of parents and guardians, their Social Security and telephone numbers, their children's names and birth dates, the names, addresses, and telephone numbers of caregivers, and the names of and places of employment of the occupants of the dwelling, did not serve to document the organization, functions, policies, decisions, procedures, operations, or other activities of CMHA. Therefore, none of the personal identifying information contained in the completed forms qualified as a record under R.C. 149.011(G), and that personal identifying information was not subject to disclosure under the Public Records Act.

{¶ 30} Finally, in *Hicks v. Union Twp. Clermont Cty. Bd. of Trustees*, ___ Ohio St.3d ___, 2024-Ohio-5449, the Supreme Court determined that the email and mail-distribution lists for the township newsletter were records under R.C. 149.011(G). The Supreme Court concluded:

> [T]he lists are not inconsequential administrative documents incidental to some primary function of the township * * *. Rather, the lists are central to connecting the township with its constituents, which is the purpose of a newsletter. Therefore, under R.C. 149.011(G), the distribution lists document particular functions and procedures of the township, revealing how and to whom the township's newsletter is regularly distributed.

*Id*. at ¶ 17.

{¶ 31} Under the foregoing precedent, whether personal information satisfies the third requirement of a record turns on whether that personal information sheds any light on the public office's performance of its activities. Thus, we must determine whether ticketholders' mailing addresses, email addresses, and telephone numbers shed light on Ohio State's ticketing activities. We conclude they do not. Any particular ticketholder's mailing address, email address, or telephone number reveals little to nothing about Ohio State's activities with regard to ticketing. The evidence shows that Ohio State uses ticketholders' email addresses and telephone numbers to administer the sale and distribution of tickets. However, by themselves, the mailing addresses, email addresses,

and telephone numbers provide no information about or insight into Ohio State's ticketing organization, functions, policies, decisions, procedures, operations, or activities. Because the ticketholders' personal information would not further the public understanding of the inner workings of Ohio State's ticketing process, disclosure of that information would not assist in monitoring government conduct.

{¶ 32} In arguing that the personal information he requests is a record, Doe points this court to *State ex rel. Harper v. Muskingum Watershed Conservancy Dist.*, 5th Dist. No. 2013 AP 06 0024, 2014-Ohio-1222. There, the requester sought the mailing addresses of everyone who leased property from the Muskingum Watershed Conservancy District ("District"). The District refused to disclose the mailing addresses, asserting that they were not records under R.C. 149.011(G) because they did not document the organization, functions, policies, decisions, procedures, operations, or other activities of the District. The District maintained that it used the mailing addresses to accomplish an administrative task—billing the lessees.

{¶ 33} The Fifth District Court of Appeals held that the mailing addresses satisfied the third requirement of a record because they "document[ed] at least one of the functions of the District[,] which is to enter into rental contracts and collect rents from the lessees." *Id.* at ¶ 9. The court also concluded "an agency's billing practices is certainly a topic which would be subject to monitoring. The addresses of those being billed would aid in that monitoring." *Id.* at ¶ 13.

{¶ 34} We do not find *Harper* persuasive authority because it distinguished, and did not rely upon, the Supreme Court precedent addressing whether personal information constitutes a record under R.C. 149.011(G). The *Harper* court did not consider whether the requested materials provided any insight into the District's activities. While the *Harper* court held that the lessees' mailing addresses documented certain District rental functions, the court did not explain how mailing addresses, by themselves, shed any light on how the District carried out the functions of entering rental contracts or collecting rents. The requested materials revealed personal information about the lessees, and nothing about the District's own conduct.

{¶ 35} Although the *Harper* court found that disclosure of the mailing addresses would assist in monitoring the District's conduct, that finding evidently relied on the

requester using the mailing addresses to contact the lessees and ask the lessees questions about their dealings with the District. That finding is inconsistent with Supreme Court precedent. Public interest in government accountability supports disclosure when the requested information itself reveals the inner workings of the government. *Johnson*, 106 Ohio St. 160, 2005-Ohio-4384, at ¶ 27; *McCleary*, 88 Ohio St.3d at 369.

{¶ 36} Further, we do not interpret *Harper*, as Doe does, for the proposition that personal contact information is a record where it relates to a person or entity conducting business with a public office. Doe's interpretation of *Harper* runs afoul of *O'Shea*. As we explained above, in *O'Shea*, the requester sought documents from CMHA that included personal information about the residents who leased dwellings from CMHA. Because the residents leased their dwellings from CMHA, the individuals whose personal information was at issue—the residents—had a business relationship with the public office—CMHA. The Supreme Court did not simply conclude that the residents' personal information constituted a record under R.C. 149.011(G) due to that business relationship. To the contrary, the Supreme Court held that the personal identifying information in the forms at issue did not serve to document the organization, functions, policies, decisions, procedures, operations, or other activities of CMHA. Thus, a business relationship between a public office and a person does not transform that person's personal information into a record for the purposes of R.C. 149.011(G).

{¶ 37} For Ohio State to sell tickets to football and basketball games, it needs to collect, retain, and use personal information to bill for tickets, communicate with ticketholders, and transfer tickets. In short, Ohio State uses the ticketholders' personal information to administer the sale of tickets, not to determine how Ohio State will organize, function, operate, or act, or to shape policies, decisions, or procedures. Consequently, the ticketholders' personal information documents the methods by which the ticketholders can be contacted; that information does not document anything about Ohio State's structure, duties, general management principles, determinations, specific methods, processes, or other acts. Because the ticketholders' personal information does not serve to document Ohio State's organization, functions, policies, decisions, procedures, operations, or other activities, none of that personal information qualifies as a record under R.C. 149.011(G).

Therefore, that personal information—the ticketholders' mailing addresses, email addresses, and phone numbers—is not subject to disclosure under the Public Records Act.

{¶ 38} As a final matter, we must address Doe's contention that Ohio State has waived the argument that *donor* ticketholders' email addresses and phone numbers are not records under R.C. 149.011(G). Before the Court of Claims, Ohio State objected to the special master's report and recommendation on the ground that "[t]he [r]equestor did not meet its 'clear and convincing' burden of proof to demonstrate that the requested [*f*]*aculty and* [*s*]*taff* phone numbers and email addresses are 'public' records." (Emphasis added.) (Respondent The Ohio State Univ.'s Objs. to the Special Master's Report and Recommendation at 2.) On appeal, Ohio State argues that the Court of Claims erred in holding that both employee and donor ticketholders' email addresses and phone numbers are not records under R.C. 149.011(G).

{¶ 39} A party who fails to raise an argument in the court below waives or forfeits the right to raise it on appeal. *West v. Bode*, 162 Ohio St.3d 293, 2020-Ohio-5473, ¶ 43. " ' "[A]n appellate court will not consider any error which counsel for a party complaining of the trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court." ' " *Risner v. Ohio Dept. of Natural Resources, Ohio Div. of Wildlife*, 144 Ohio St.3d 278, 2015-Ohio-3731, ¶ 26, quoting *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, ¶ 15, quoting *State v. Childs*, 14 Ohio St.2d 56 (1968), paragraph three of the syllabus.

{¶ 40} This appeal presents the unusual situation where the complaining party—Ohio State—raised in substance the exact argument in the Court of Claims that it now raises on appeal. True, on appeal, Ohio State now broadens the universe of ticketholders to which it applies the argument, but Ohio State continues to make the same argument it first advanced before the Court of Claims. Given this unique situation, we conclude Ohio State did not waive or forfeit its argument with regard to the donor ticketholders. We have the benefit of the Court of Claims' review of Ohio State's argument, and Doe has had a full and fair opportunity to respond to it. In such circumstances, application of the forfeiture or waiver doctrine would defy common sense.

{¶ 41} Based on the foregoing analysis, we conclude that the Court of Claims properly determined the ticketholders' mailing addresses did not qualify as records under

R.C. 149.011(G). Accordingly, we overrule Doe's first assignment of error. We conclude that the Court of Claims erred in determining the ticketholders' email addresses and phone numbers qualified as records under R.C. 149.011(G). Accordingly, we sustain Ohio State's two cross-assignments of error.

## B. Can a Requester in an R.C. 2743.75 Action Recover Statutory Damages Under R.C. 149.43?

{¶ 42} We next turn to Doe's second assignment of error. By that assignment of error, Doe argues that the Court of Claims erred in not awarding him statutory damages pursuant to R.C. 149.43. We disagree.

{¶ 43} Doe claims entitlement to statutory damages pursuant to R.C. 149.43(C), even though he filed a public-records-access complaint in the Court of Claims pursuant to R.C. 2743.75. To determine if Doe is correct, we must construe both R.C. 149.43(C) and R.C. 2743.75(F).

{¶ 44} The primary goal of statutory construction is to ascertain and give effect to the General Assembly's intent. *Gabbard v. Madison Local School Dist. Bd. of Edn.*, 165 Ohio St.3d 390, 2021-Ohio-2067, ¶ 13; *Hulsmeyer v. Hospice of Southwest Ohio, Inc.*, 142 Ohio St.3d 236, 2014-Ohio-5511, ¶ 21. When statutory language is plain and unambiguous, and conveys a clear and definite meaning, a court must rely on what the General Assembly has said to determine its intent. *Dundics v. Erie Petroleum Corp.*, 155 Ohio St.3d 192, 2018-Ohio-3826, ¶ 7; *Hulsmeyer* at ¶ 23. A court must give effect to the words the General Assembly used, making neither additions nor deletions from the statute. *Gabbard* at ¶ 13; *Piazza v. Cuyahoga Cty.*, 157 Ohio St.3d 497, 2019-Ohio-2499, ¶ 16; *Hulsmeyer* at ¶ 23. An appellate court reviews questions of statutory construction de novo. *Wayt v. DHSC, L.L.C.*, 155 Ohio St.3d 401, 2018-Ohio-4822, ¶ 15.

{¶ 45} In relevant part, R.C. 149.43(C)(1) states:

> [T]he person allegedly aggrieved [by a failure to comply with R.C. 149.43(B)] may do only one of the following, and not both:
>
> (a) File a complaint with the clerk of the court of claims * * * under section 2743.75 of the Revised Code;
>
> (b) Commence a mandamus action to obtain a judgment that orders the public office or the person responsible for the public record to comply with division (B) of this section, that awards court costs and reasonable attorney's fees to the person that

instituted the mandamus action, and, if applicable, that includes an order fixing statutory damages under division (C)(2) of this section.

{¶ 46} R.C. 149.43(C)(2) specifies the circumstances under which a requester of public records is entitled to statutory damages. *State ex rel. Straughter v. Ohio Dept. of Rehab. & Corr.*, 172 Ohio St.3d 335, 2023-Ohio-1543, ¶ 9 (listing the three requirements set forth in R.C. 149.43(C)(2) for the award of statutory damages). In relevant part, that division also provides:

> The amount of statutory damages shall be fixed at one hundred dollars for each business day during which the public office or person responsible for the requested public records failed to comply with an obligation in accordance with division (B) of this section, *beginning with the day on which the requester files a mandamus action* to recover statutory damages, up to a maximum of one thousand dollars. * * *
>
> The court may reduce an award of statutory damages or not award statutory damages if the court determines * * *:
>
> (a) That, based on the ordinary application of statutory law and case law as it existed at the time of the conduct or threatened conduct * * * that allegedly constitutes a failure to comply with an obligation in accordance with division (B) of this section and *that was the basis of the mandamus action*, a well-informed public office or person responsible for the requested public records reasonably would believe that the conduct or threatened conduct * * * did not constitute a failure to comply with an obligation in accordance with division (B) of this section[.]

(Emphasis added.) R.C. 149.43(C)(2).

{¶ 47} R.C. 2743.75(F)(3) specifies the relief available to a requester of public records in a public-records-access action in the Court of Claims. According to that division:

> If the court of claims determines that the public office or person responsible for the public records denied the aggrieved person access to the public records in violation of division (B) of section 149.43 of the Revised Code and if no appeal from the court's final order is taken under division (G) of this section, both of the following apply:
>
> (a) The public office or the person responsible for the public records shall permit the aggrieved person to inspect or receive

copies of the public records that the court requires to be disclosed in its order.

(b) The aggrieved person shall be entitled to recover from the public office or person responsible for the public records the amount of the filing fee of twenty-five dollars and any other costs associated with the action that are incurred by the aggrieved person, but shall not be entitled to recover attorney's fees, except that division (G)(2) of this section applies if an appeal is taken under division (G)(1) of this section.

R.C. 2743.75(F)(3).

{¶ 48} R.C. 2743.75(G)(1) allows an appeal of the Court of Claims' final order under certain circumstances. If the public office or person responsible for the public records appeals the Court of Claims' final order, a court of appeals may award the aggrieved person attorney's fees if it determines the purpose of the appeal is to delay compliance for no reasonable cause or unduly harass the aggrieved person. R.C. 2743.75(G)(2).

{¶ 49} Pursuant to the plain language of R.C. 149.43(C)(1), a person allegedly aggrieved by a failure to disclose a public record has a choice: (1) under R.C. 149.43(C)(1)(a), he or she may file a public-records-access complaint pursuant to R.C. 2743.75, or (2) under R.C. 149.43(C)(1)(b), he or she may file a mandamus complaint. Unlike R.C. 149.43(C)(1)(a), R.C. 149.43(C)(1)(b) specifies the type of relief an aggrieved party may obtain. R.C. 149.43(C)(1)(b) states that a person commencing a mandamus action may obtain a judgment that: (1) orders compliance with R.C. 149.43(B), (2) awards court costs and reasonable attorney's fees, and (3) if applicable, includes an order fixing statutory damages under R.C. 149.43(C)(2). Thus, under R.C. 149.43(C)(1)(b), statutory damages are available in mandamus actions.

{¶ 50} R.C. 149.43(C)(2) corresponds with R.C. 149.43(C)(1)(b). R.C. 149.43(C)(2) calculates the amount of statutory damages by the day "beginning with the day on which the requester files a mandamus action to recover statutory damages." Additionally, R.C. 149.43(C)(2) directs the trial court to consider the failure to comply with R.C. 149.43(B) "that was the basis of the mandamus action" when contemplating the award of statutory damages. Both references to a "mandamus action" indicate that the General Assembly intended to limit the award of statutory damages to mandamus actions only.

{¶ 51} Doe claims that these references are mere legislative oversight. We do not agree. "It is a basic tenant of statutory construction that 'the General Assembly is not

presumed to do a vain or useless thing, and that when language is inserted in a statute it is inserted to accomplish some definite purpose.' " *State v. Wilson*, 77 Ohio St.3d 334, 336 (1997), quoting *State ex rel. Cleveland Elec. Illuminating Co. v. Euclid*, 169 Ohio St. 476, 479 (1959).

{¶ 52} While R.C. 149.43(C)(1)(a) does not state the type of relief available in a public-records-access action filed in the Court of Claims, R.C. 2743.75(F)(3) fills in the gap. R.C. 2743.75(F)(3)(b) entitles the successful requester to recover his court costs, including the filing fee. R.C. 2743.75(F)(3)(b) also provides that the requester "shall not be entitled to recover attorney's fees" from the Court of Claims but may obtain an award of attorney's fees from a court of appeals pursuant to R.C. 2743.75(G)(2).

{¶ 53} Nothing in R.C. 2743.75(F)(3) permits or entitles a requester who successfully pursues a public-records-access action under R.C. 2743.75 to recover statutory damages. By not listing statutory damages as an available remedy in R.C. 2743.75(F)(3), the General Assembly unambiguously precludes a successful requester from recovering statutory damages. Doe, however, argues that this court should apply the doctrine of expressio unius est exclusio alterius and interpret the prohibition on the award of attorney's fees at the trial court level as implying a legislative grant of authority to award statutory damages.

{¶ 54} The doctrine of expressio unius est exclusio alterius " 'is an aid in interpreting *ambiguous* statutes' and should not be applied to defeat legislative intent when there is no ambiguity." *State ex rel. Cincinnati Enquirer v. Pike Cty. Gen. Health Dist.*, 154 Ohio St.3d 297, 2018-Ohio-3721, ¶ 22, quoting *State ex rel. Wilson v. Preston*, 173 Ohio St. 203, 209 (1962) (emphasis added in *Pike Cty. Gen. Health Dist.*). Because R.C. 2743.75(F) is not ambiguous, the doctrine of expressio unius est exclusio alterius does not apply here. Courts give effect to the words used in a statute and refrain from inserting additional language into statutes. *Gabbard*, 165 Ohio St.3d 390, 2021-Ohio-2067, at ¶ 13; *Piazza*, 157 Ohio St.3d 497, 2019-Ohio-2499, at ¶ 16; *Hulsmeyer*, 142 Ohio St.3d 236, 2014-Ohio-5511, at ¶ 26, 27. If we applied the doctrine of expressio unius est exclusio alterius as Doe advocates, we would effectively rewrite R.C. 2743.75(F) to add a remedy the General Assembly did not provide. We cannot do that under the guise of statutory interpretation.

{¶ 55} In sum, we conclude that the Court of Claims did not err in refusing to award Doe statutory damages.  Accordingly, we overrule Doe's second assignment of error.

## IV.  CONCLUSION

{¶ 56} For the foregoing reasons, we overrule Doe's first and second assignments of error.  We sustain Ohio State's first and second cross-assignments of error.  We affirm the judgment of the Court of Claims of Ohio in part and reverse it in part.  In addition to the redactions permitted by the judgment of the Court of Claims of Ohio, Ohio State shall be permitted to redact the ticketholders' email addresses and phone numbers.

*Judgment affirmed in part and reversed in part.*

MENTEL, P.J., and BEATTY BLUNT, J., concur.

_____