[Cite as *White v. Ross Corr. Inst.*, 2026-Ohio-1002.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Donna M. White, | : | |
| Requester-Appellant, | : | No. 25AP-800 (Ct. of Cl. No. 2025-00474PQ) |
| v. | : | (ACCELERATED CALENDAR) |
| [Ross Correctional Institution], | : | |
| | : | |
| Respondent-Appellee. | : | |
| | : | |

D E C I S I O N

Rendered on March 24, 2026

**On brief:** *Donna M. White*, pro se. **Argued:** *Donna M. White*.

**On brief:** *Dave Yost*, Attorney General, *D. Chadd McKitrick*, and *Nicole C. Hendrix*, for appellee. **Argued:** *Nicole C. Hendrix*.

APPEAL from the Court of Claims of Ohio

EDELSTEIN, J.

{¶ 1} Requester-appellant, Donna M. White, appeals from the September 12, 2025 judgment of the Court of Claims of Ohio dismissing her complaint against respondent-appellee, Ross Correctional Institution ("RCI"), a state prison operated by the Ohio Department of Rehabilitation and Correction ("ODRC"), pursuant to Civ.R. 12(B)(6). For the foregoing reasons, we reverse in part.

## I. FACTS AND PROCEDURAL BACKGROUND

{¶ 1} On July 23, 2024, Ms. White's son died while he was in the custody of ODRC at RCI. After his death, Ms. White made multiple verbal and written requests to RCI for copies of her deceased son's medical records; stationary and body-worn camera audio and

video recordings from July 7, 2024 to July 23, 2024; and other items related to her son's death.

{¶ 2}   Some of the requested records were provided to Ms. White in January, March, and April 2025.  On May 12, 2025, Ms. White filed a complaint in the court of claims against RCI, as an institution operated by ODRC, (hereinafter "ODRC" or the "department," collectively) pursuant to R.C. 2743.75, alleging a denial of access to public records in violation of R.C. 149.43(B).  Pursuant to R.C. 2743.75(D)(2), the matter was referred to a special master.  On May 16, 2025, the special master issued an order bypassing mediation on account of how long Ms. White's public records requests had been pending.  Within that same order, the special master created a case schedule requiring the parties to submit evidence and arguments in support of their positions.  The special master also required ODRC to (1) file and serve Ms. White with copies of all records responsive to the requests identified in her complaint, subject to redactions and withholdings it believed were permitted by law, and (2) file, under seal, unredacted copies of all records responsive to Ms. White's public records requests that it believed were exempted from production for in-camera review by the special master.

{¶ 3}   On June 16, 2025, ODRC filed a motion to dismiss Ms. White's complaint, arguing a procedural defect in her affirmations under R.C. 149.43(C)(2).  Although the special master ordered ODRC to file its response to Ms. White's complaint by June 26, 2025 (June 3, 2025 Order), ODRC did not timely file any substantive response to Ms. White's allegation that it improperly denied some of her records requests, provided deficient responses to other requests, failed to provide a legal basis for its denials, and unreasonably delayed its responses to her requests.  Instead, ODRC completed its response to Ms. White's public records request in July 2025, redacting some of those records and withholding others based on asserted exemptions under R.C. 149.43, as described more below.

{¶ 4}   On July 22, 2025, the special master issued a report finding ODRC violated R.C. 149.43, in part, by unreasonably delaying its responses to Ms. White's public records requests, and recommending that Ms. White's request to compel production of some records be granted, in part.

{¶ 5}   Regarding Ms. White's request for footage from stationary cameras capturing events involving her son that occurred between July 7, 2024 and July 23, 2024, the special

master observed that although "ODRC produced videos from stationary cameras that were recorded during portions of July 10, 13, 18, 22, and 23, 2024," Ms. White contended that "additional videos exist and that ODRC should be ordered to produce them." (July 22, 2025 Report and Recommendation at 5-6.) Finding Ms. White failed to come forward with some evidence that additional videos shot from stationary cameras existed, the special master recommended that ODRC not be required to produce additional videos relevant to this request. (Report and Recommendation at 6-7.)

{¶ 6} Ms. White also requested body-worn camera footage captured between July 7, 2024 and July 23, 2024. ODRC produced three redacted recordings from body-worn cameras, all recorded on July 23, 2024. Noting that these recordings, in addition to the recordings produced from the stationary cameras, showed multiple ODRC employees wearing body cameras on various dates, the special master found Ms. White satisfied her burden of producing "some evidence" that additional recordings made from body-worn cameras exist. (*See* Report and Recommendation at 7-8.) Accordingly, the special master recommended ODRC be ordered to "[p]roduce the body worn camera recordings from the employees present during the events between July 7 and 23, 2024 described in Ms. White's requests that have not been previously produced and make an affirmation that no other recordings of those events made from body worn cameras exist." (Report and Recommendation at 15.)

{¶ 7} Regarding ODRC's redactions of the July 23, 2024 body-worn camera footage it did provide to Ms. White, the special master found the department appropriately redacted images of Ms. White's son under R.C. 149.43(A)(17)(b), as those portions of the footage depicted "a deceased person's body" or the "death of a person." (Report and Recommendation at 8-9.) Significantly, the special master observed the absence of any evidence suggesting the death of Ms. White's son was caused by a correctional employee or stemmed from "a confrontation, violent or otherwise, between Ms. White's son and ODRC staff." (Report and Recommendation at 9.) Indeed, regarding the circumstances of her son's death, the special master found the evidence presented by the parties established the following:

> [Ms. White's son] was found to be nonresponsive around 12:00 a.m. on July 23, 2024. ODRC staff called for an ambulance to take him to a local hospital, and administered Narcan and CPR

during the approximately 25 minutes that elapsed before the ambulance arrived. The EMTs and medical professionals at the hospital made continued efforts to revive him, but he was pronounced dead at 12:56 a.m.

(Report and Recommendation at 1.) Further, "records generated at the hospital where Ms. White's son was taken reported that the EMTs found him to 'be in cardiorespiratory arrest' when they arrived at the prison. Those records also reported that '[u]pon presentation to the emergency department, [the] patient remain[ed] in cardiac arrest' and that '[b]edside cardiac ultrasound showed complete standstill.' " (Report and Recommendation at 9.) Ultimately, the special master found the parties' evidence established cardiac arrest caused the death of Ms. White's son. (Report and Recommendation at 9.) And, of note, Ms. White did not challenge this factual finding on appeal.

{¶ 8} As to ODRC's redactions to images of a computer screen, notepad, and flyer in the produced July 23, 2024 body-worn camera footage, however, the special master found ODRC failed to prove these redactions were proper under R.C. 149.433 (exempting security records from public records classification) or R.C. 5120.21(D) (requiring ODRC to keep certain types of records confidential). (Report and Recommendation at 9-10.) Accordingly, the special master recommended ODRC be ordered to reproduce the July 23, 2023 body-worn camera footage "without the redactions made from 2:56-3:11; 6:32-6:59; 13:09-14:01; 21:36-21:44; 22:26-22:30 and 22:56-23:26 of [the 561,736 KB] video." (Report and Recommendation at 15.)

{¶ 9} Regarding Ms. White's request for the production of her son's medical records, the special master found it was improper for ODRC to withhold all of her son's medical records based on its internal agency policy. At the same time, the special master acknowledged that medical records "generated and maintained in the process" of her son's medical treatment were subject to exemption under R.C. 149.43(A)(3). (Report and Recommendation at 10.) However, the special master also noted "[a] significant number of the withheld [medical] records were only created" after Ms. White's son passed away and concluded that these records were not subject to R.C. 149.43(A)(3) because "the treatment process had ended before they were generated." (Report and Recommendation at 10-11, citing *State ex rel. Ware v. Cleveland*, 55 Ohio App.3d 75, 77 (8th Dist. 1989).) Accordingly, the special master recommended ODRC be ordered to produce the portion of the medical

records generated after the death of Ms. White's son, specifically pages 4-22 and 25. (Report and Recommendation at 10-11.)

{¶ 10} In her complaint, Ms. White also requested that ODRC produce photographs of her son after his death and the areas where his body was located. ODRC ultimately produced these requested photographs during the pendency of the case, and Ms. White did not challenge the sufficiency of this production. As such, the special master found this portion of her requests to be moot. (Report and Recommendation at 11.)

{¶ 11} Ms. White further requested that ODRC be compelled to produce information about various inmates and ODRC staffers who interacted with her son in the weeks preceding his death. Finding these requests are not enforceable under R.C. 149.43, the special master recommended denying relief on those requests. (Report and Recommendation at 11.)

{¶ 12} ODRC filed objections to the special master's report on July 29, 2025. In its objections, ODRC argued (1) the medical records are exempt under R.C. 149.43(A)(1) and (A)(3); (2) there was evidence that the body-worn camera footage ODRC produced with redactions contained security information exempt under R.C. 149.433; (3) ODRC produced sufficient evidence to establish that no additional body-worn camera footage responsive to Ms. White's public records requests exists; and (4) ODRC did not unreasonably delay its responses to Ms. White's public records requests. As noted by the trial court, however, ODRC failed to serve Ms. White with a copy of its objections through certified mail, return receipt requested, as required by R.C. 2743.75(F)(2). (Sept. 12, 2025 Decision and Entry at 4.)

{¶ 13} Between July 23, 2025 and August 7, 2025, Ms. White filed various documents concerning ODRC's compliance with the special master's July 22, 2025 Report and Recommendation.[1] In those filings, Ms. White objected to ODRC's request for additional time to comply with the special master's report and recommendation (*see, e.g.*, July 23, 2025 Mot. for Immediate Compliance and Obj. to Delay), took issue with the quality and completeness of items produced by ODRC after July 22, 2025 (*see, e.g.*, July 23,

---

[1] On September 10, 2025, Ms. White also filed a 77-page document captioned as "Affidavit of Donna White in Support of Wrongful Death, Intentional Tort, and Civil Rights Claims." We note, however, such claims must be asserted through a complaint in a separate action, not as a supplemental pleading in a public-records access lawsuit. Accordingly, we do not consider the claims or merits of allegations contained in this document.

2025 Updated Obj. to Incomplete Production and Misrepresentations), challenged the veracity of ODRC's claim that its stationary cameras do not "record audio to be submitted by thumb drive or disc" (*see*, *e.g.*, July 24, 2025 Ex. Notes), and broadly alleged that ODRC failed to comply with the special master's July 22, 2025 Report and Recommendation (*see*, *e.g.*, Aug. 7, 2025 Obj. to Incomplete Production and Non-Compliance). However, on review of the record, we find Ms. White did not file any objections properly challenging the findings and recommendations contained in the special master's July 22, 2025 Report and Recommendation in accordance with R.C. 2743.75(F)(2). Nor did she file any response to ODRC's July 29, 2025 objections.

{¶ 14} On September 12, 2025, the court of claims issued an entry adopting, in part, and rejecting, in part, the special master's report and recommendation. Specifically, the court of claims sustained ODRC's first, third, and fourth objections, finding (1) the medical records, in their entirety, are not public records subject to production, (2) Ms. White failed to show additional body worn camera footage responsive to her request exists, and (3) ODRC responded to Ms. White's requests within a reasonable period of time.

{¶ 15} Ms. White timely appealed from that judgment and now asserts the following five assignments of error for our review:

> [I.] THE COURT OF CLAIMS ERRED BY DISMISSING THE ACTION WITHOUT ENFORCING THE SPECIAL MASTER'S ORDER REQUIRING FULL DISCLOSURE OF RESPONSIVE PUBLIC RECORDS.
>
> [II.] THE COURT OF CLAIMS ERRED BY FAILING TO ADDRESS OR REMEDY CONFIRMED EVIDENCE DELETION (SPOLIATION) OF BODY-WORN CAMERA FOOTAGE RELATED TO THE CUSTODIAL DEATH OF [MS. WHITE'S] SON.
>
> [III.] THE COURT OF CLAIMS ERRED BY FINDING COMPLIANCE WITH THE OHIO PUBLIC RECORDS ACT WHERE ODRC PROVIDED ONLY EXPIRING, VIEW-ONLY LINKS TO BODY-WORN CAMERA FOOTAGE, CONTRARY TO R.C. 149.43 AND THE SPECIAL MASTER'S RECOMMENDATIONS.
>
> [IV.] THE COURT OF CLAIMS VIOLATED [MS. WHITE'S] DUE PROCESS AND FIRST AMENDMENT RIGHTS BY CLOSING THE CASE PREMATURELY AND FAILING TO

ADDRESS ONGOING CONSTITUTIONAL VIOLATIONS RELATED TO ACCESS TO PUBLIC RECORDS AND PETITIONING THE GOVERNMENT.

[V.] THE COURT OF CLAIMS'[S] JUDGMENT IS VOID OR VOIDABLE WHERE THE PRESIDING JUDGE'S AUTHORITY AND APPOINTMENT RECORDS ARE UNCLEAR OR NOT DOCUMENTED, RAISING CONCERNS ABOUT THE VALIDITY OF THE FINAL JUDGMENT.

## II. ANALYSIS

{¶ 16} Ohio's Public Records Act, codified in R.C. 149.43, provides that, upon request, a public office "shall make copies of the requested public record available to the requester at cost and within a reasonable period of time." R.C. 149.43(B)(1). Ohio courts construe the Public Records Act liberally in favor of broad access, with any doubt resolved in favor of disclosure of public records. *State ex rel. Hogan Lovells U.S., L.L.P. v. Dept. of Rehab. & Corr.*, 2018-Ohio-5133, ¶ 12.

{¶ 17} Recognizing that disputes over public-records requests can frustrate the law's essential purpose, the General Assembly enacted R.C. 2743.75(A) "to provide for an expeditious and economical procedure that attempts to resolve disputes alleging a denial of access to public records" in violation of R.C. 149.43(B). A person who believes they have been aggrieved by a denial of access to public records may file either a mandamus complaint pursuant to R.C. 149.43(C)(1)(b) or a public-records-access complaint in the court of claims pursuant to R.C. 2743.75. *Welsh-Huggins v. Jefferson Cty. Prosecutor's Office,* 2020-Ohio-5371, ¶ 12. In this case, Ms. White sought redress under R.C. 2743.75.

### A. Public-Records Dispute Proceedings under R.C. 2743.75 and Standard of Review

{¶ 18} A person alleging a denial of access to public records under R.C. 2743.75 must file a complaint on the form prescribed by the clerk of the court of claims, with "copies of the original records request and any written responses or other communications relating to the request from the public office or person responsible for public records" attached thereto. R.C. 2743.75(D)(1). Upon receipt of the complaint, the clerk of the court of claims assigns a special master to examine the complaint. R.C. 2743.75(D)(2). After service of the complaint, the special master immediately shall refer the case to mediation services

provided by the court of claims unless—as was the case here—the special master determines the case should not be referred to mediation.  R.C. 2743.75(E)(1).

{¶ 19}  If the dispute is not resolved through mediation or where mediation is bypassed, the public office or person responsible for public records shall file a response and, if applicable, a motion to dismiss the complaint within ten days of the termination of mediation.  R.C. 2743.75(E)(2).  The special master shall not permit any discovery.  R.C. 2743.75(E)(3)(a).  The parties may attach supporting affidavits to their respective pleadings.  R.C. 2743.75(E)(3)(b).  The special master may require either or both of the parties to submit additional information or documentation supported by affidavits.  R.C. 2743.75(E)(3)(c).

{¶ 20}  Not later than seven business days after receiving the response or motion to dismiss filed by the public officer or person responsible for public records, and unless extended for good cause by an additional seven days, "the special master shall submit to the court of claims a report and recommendation based on the ordinary application of statutory law and case law as they existed at the time of the filing of the complaint."  R.C. 2743.75(F)(1).  Copies of the special master's report and recommendation must be sent to each party not later than three days after it is filed.  R.C. 2743.75(F)(2).

{¶ 21}  Because the remedies provided by the statutory option for resolving a public-records access dispute are "functionally the same" as those available through a mandamus proceeding, the standards applicable to both should be "consistent."  *Welsh-Huggins*, 2020-Ohio-5371, at ¶ 32.  Accordingly, "in a R.C. 2743.75 proceeding, the requester carries the burden of production to plead and prove facts showing that it 'sought an identifiable public record pursuant to R.C. 149.43(B)(1) and that the public office or records custodian did not make the record available.' "  *Doe v. Ohio State Univ.*, 2024-Ohio-5891, ¶ 18 (10th Dist.), quoting *Welsh-Huggins* at ¶ 33.  " 'Additionally, the burden of persuasion is on the requester to establish its entitlement to relief by clear and convincing evidence.' "  *Law Office of Josh Brown, LLC v. Ohio Secy. of State*, 2025-Ohio-2130, ¶ 10 (10th Dist.), quoting *Doe* at ¶ 18, citing *Viola v. Cuyahoga Cty. Prosecutor's Office*, 2021-Ohio-4210, ¶ 16 (8th Dist.).

{¶ 22}  Either party may object to the special master's report and recommendation by filing written objections specifically stating, with particularity, all grounds for the

objections. R.C. 2743.75(F)(2). The objecting party must file their written objections with the clerk of the court of claims "within seven business days after receiving the report and recommendation" and send a copy of their objections "to the other party *by certified mail, return receipt requested*." (Emphasis added.) R.C. 2743.75(F)(2). If either party timely objects, the other party may file a response within seven business days after receiving the objection(s) and send a copy of the response to the objecting party by certified mail, return receipt requested. R.C. 2743.75(F)(2). Where objections are made to the special master's report and recommendation, the court shall issue a final order that adopts, modifies, or rejects the report and recommendation within seven business days after the response to the objection is filed.

{¶ 23} If neither party timely objects to the special master's report and recommendation, however, R.C. 2743.75 requires the court of claims to "promptly issue a final order adopting the report and recommendation, *unless* it determines that there is an error of law or other defect *evident on the face* of the report and recommendation." (Emphasis added.)

{¶ 24} "Whether a particular record is by statute exempt from disclosure as a public record fundamentally presents an issue of law, although the application of the statutory exemption will necessarily depend on its factual application to the record in question." *Welsh-Huggins*, 2020-Ohio-5371, at ¶ 37. Thus, in a public-records-access appeal filed pursuant to R.C. 2743.75(G)(1), we independently review legal issues de novo but will defer to the trial court's underlying factual findings, reviewing them only for clear error. *See, e.g.*, *id.* at ¶ 37-40. *See also Ludlow v. Ohio Dept. of Health*, 2024-Ohio-1399, ¶ 10 ("We review pure questions of law and interpret statutes de novo.").

**B. Because neither party timely objected to the special master's report and recommendation in the manner prescribed by R.C. 2743.75(F)(2), the trial court exceeded the scope of its review**

{¶ 25} Reviewing the special master's report and recommendation in this case, the trial court noted the certificate of service attached to ODRC's July 29, 2025 objections "certified that a copy of [ODRC's] filing was sent to [Ms. White] 'via prepaid U.S. mail'—not certified mail, return receipt requested, as required by R.C. 2743.75(F)(2)." (Sept. 12, 2025 Decision and Entry at 4.) ODRC has not contested the propriety of this factual finding, and,

on review, we find the record confirms as much. Notably, too, as observed by the trial court, Ms. White did not file any response to ODRC's objections.

{¶ 26} Further, as explained by the trial court, Ms. White did not lodge specific objections, stated with particularity, to the special master's July 22, 2025 report and recommendation. (Sept. 12, 2025 Decision and Entry at 6-8.) In "objections" filed on July 23, 2025 and August 7, 2025, Ms. White took issue with the adequacy of ODRC's production of records in a package she received on July 22, 2025. (*See* Sept. 12, 2025 Decision and Entry at 7.) Because Ms. White's "objections" concerned items she received on the same date the special master's report and recommendation was issued, the trial court observed the package subject to her objections "likely would not contain items recommended for production by the Special Master in the Report and Recommendation, especially given [ODRC's] subsequent objections to the Special Master's recommended disclosures." (Sept. 12, 2025 Decision and Entry at 7-8.) Notably, Ms. White does not challenge the propriety of these findings on appeal.

{¶ 27} Ultimately, then, we find neither party timely lodged objections to the special master's July 22, 2025 report and recommendation in the manner prescribed by R.C. 2743.75(F)(2). In the absence of objections properly before the court, the trial court was required to "adopt[] the report and recommendation, unless it determines that there is an error of law or other defect evident ***on the face*** of the report and recommendation." (Emphasis added.) R.C. 2743.75(F)(2). However, here, the trial court fully considered each of ODRC's objections by independently reviewing the submitted evidence. (*See, e.g.*, Sept. 12, 2025 Decision and Entry at 11, 13-15.)

{¶ 28} Because the language requiring service of objections to a special master's report and recommendation "by certified mail, return receipted requested" is mandatory under R.C. 2743.75(F)(2), we find the trial court erred in considering ODRC's objections and issuing an order that exceeded its statutory role in determining whether "there is an error of law or other defect evident ***on the face*** of the report and recommendation." (Emphasis added.) R.C. 2743.75(F)(2). Accordingly, we sustain Ms. White's first assignment of error, in part, to the extent she argues the trial court erred in considering ODRC's objections and conducting an independent review of the evidence.

{¶ 29} In light of our resolution of Ms. White's first assignment of error, her remaining assignments of error have been rendered moot. Accordingly, we decline to address them. *See* App.R. 12(A)(1)(c).

### III. CONCLUSION

{¶ 30} Ms. White's first assignment of error is sustained to the extent discussed above, and we decline to address her second, third, fourth, and fifth assignments of error, as they have been rendered moot. The September 12, 2025 judgment of the Court of Claims of Ohio is reversed, in part, and the matter is remanded for proceedings consistent with this decision and the applicable law.

*Judgment reversed in part;*
*cause remanded.*

BOGGS, P.J., and DINGUS, J., concur.