[Cite as *Law Office of Josh Brown, L.L.C. v. Ohio Secy. of State*, 2025-Ohio-2130.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The Law Office of Josh Brown, LLC, | : | |
| Requester-Appellee, | : | |
| | : | No. 24AP-170 |
| v. | : | (Ct. of Cl. No. 2023-00510PQ) |
| Ohio Secretary of State, | : | (REGULAR CALENDAR) |
| Respondent-Appellant. | : | |
| | : | |

D E C I S I O N

Rendered on June 17, 2025

**On brief:** *Joshua J. Brown* for appellee. **Argued:** *Joshua J. Brown.*

**On brief:** *Dave Yost*, Attorney General, *Heather L. Buchanan, Michael A. Walton*, and *Byers B. Emmerling* for appellant. **Argued:** *Michael A. Walton.*

APPEAL from the Court of Claims of Ohio

MENTEL, J.

{¶ 1} Respondent-appellant, Ohio Secretary of State, appeals from the decision of the Court of Claims of Ohio ordering the secretary's office to produce emails in response to the public records request of requester-appellee, the Law Office of Josh Brown, LLC. Finding no error in the judgment of the Court of Claims, we affirm.

## I. Factual and Procedural Background

{¶ 2} On June 29, 2023, attorney Josh Brown sent the following request to Julia Lawrence, the Assistant Chief Legal Counsel at the Office of the Ohio Secretary of State:

I would like to request copies of any email that meets the following criteria:

1.  Includes the word "Blystone"; and

2.  Sent or received between May 1, 2022 to December 31, 2022 by Secretary Frank LaRose;

3.  Sent or received May 1, 2022 to December 31, 2022 by Secretary of State employee Brian Katz;

4.  Sent or received May 1, 2022 to December 31, 2022 by Secretary of State Employee Jason Long;

5.  Sent or received May 1, 2022 to December 31, 2022 by any other Secretary of State employee email.

This should be easy to attain by simply putting the word "Blystone" into the search bar for the email addresses of these individuals.

Second, I would like the office to confirm whether any of the following individuals have text message communications, on personal or office phones, including the word "Blystone" from May 1, 2022 to December 31, 2022: Secretary Frank LaRose, Secretary of State employee Brian Katz, and Secretary of State employee Jason Long.

This should be easy to attain by simply asking them to put the word "Blystone" into the search mechanism on their cell phones.

If these preceding requests are "overly broad" or unproducible for any reason, please send give me a time and place, and we will be glad to inspect the individual's email accounts personally.

(Ex. A, Aug. 1, 2023 Compl.)

{¶ 3} Ms. Lawrence responded to Mr. Brown's requests on behalf of the secretary's office on July 24, 2023. Citing *State ex rel. Zidonis v. Columbus State Community College*, 2012-Ohio-4228, her response denied the request for the emails of the named employees, stating that it was "overly broad" because "it fail[ed] to identify both the sender and the recipient of the communications" sought by Mr. Brown. (Ex. B, Compl.) The response also

considered Mr. Brown's request overly broad because it did "not list the internal or external correspondents with whom the identified Secretary of State employees may have been corresponding," asserting therefore that "voluminous research would need to be conducted in order to identify any potential correspondents" to comply. *Id.* Mr. Brown's request for emails to or from "any other Secretary of State employee email" was also denied as overly broad, citing *Kanter v. Cleveland Hts.*, 2018-Ohio-4592 (Ct. of Cl.). *Id.* Finally, Ms. Lawrence rejected the request to produce text message of the secretary's employees, noting that it was "a request for information, which is not a proper public records request under Ohio law." *Id.*

{¶ 4} Mr. Brown filed a complaint in the Court of Claims on August 1, 2023, invoking the procedure under R.C. 2743.75 that provides a statutory alternative to a mandamus action for a party alleging a denial of access to public records under R.C. 149.43. Pursuant to R.C. 2743.75(D)(2), the matter was referred to a special master. After an unsuccessful attempt at mediation, the special master issued a report recommending that the court order the secretary's office to produce records responsive to Mr. Brown's first request for the emails but deny the request for the text messages. The special master concluded that criteria stated in the email request were sufficiently specific to resist being categorized as overly broad, and the assertion that the email server would have difficulty with the request did "not go to the breadth of this request." (Nov. 29, 2023 Report & Recommendation at 4.) The special master reasoned that although R.C. 149.43(B)(2) "authorizes offices to deny unclear requests" as being overly broad, "it nowhere authorizes an office to reject an otherwise clear request because of the limitations of the office's records management systems." *Id.* However, the special master considered Mr. Brown's request to "confirm whether any of the [named] individuals have text message communications" containing the "Blystone" keyword to be "not enforceable because it sought information, not records." *Id.* at 6.

{¶ 5} The secretary's office filed objections to the special master's report on December 11, 2023, arguing that Mr. Brown had not met his burden to show a violation of public records law by clear and convincing evidence and disagreeing with the special master's assessment of the request as not overbroad. The Court of Claims found that although special master did not "explicit[ly]" find that the burden of proof had been meet,

the recommendation to order the emails showed that he "implicitly found that Requester satisfied his burden of proof." (Feb. 6, 2024 Decision & Entry at 5.) In addition, the court found that the request "identified with reasonable clarity" the records sought, and agreed with the special master's analysis that the purported difficulty of retrieving the emails did not make them overly broad. *Id.* at 5-7. Accordingly, the Court of Claims overruled the objections, adopted the report and recommendations, and ordered the secretary's office to produce the emails described in the first request.

{¶ 6} The secretary's office has appealed the Court of Claim's decision and asserts the following assignments of error:

> [I.] The lower court erred when it ignored Appellee's burden to prove a public records violation by clear and convincing evidence.

> [II.] The lower court erred when it found that Appellee's public records request was not overly broad.

## II. Standard of Review

{¶ 7} "Whether a particular record is by statute exempt from disclosure as a public record fundamentally presents an issue of law, although the application of the statutory exemption will necessarily depend on its factual application to the record in question." *Welsh-Huggins v. Jefferson Cty. Prosecutor's Office*, 2020-Ohio-5371, ¶ 37. Thus, in an appeal of a public records proceeding brought under R.C. 2743.75, the appellate court "will independently review the legal question de novo but will defer to the trial court's underlying factual findings, reviewing them only for clear error." *Id.*

## III. Analysis

{¶ 8} The Public Records Act, R.C. 149.43, safeguards "the right of access to public records" in Ohio. *Id.* at ¶ 10. The act "reflects the state's policy that 'open government serves the public interest and our democratic system.' " *State ex rel. Morgan v. New Lexington*, 2006-Ohio-6365, ¶ 28, quoting *State ex rel. Dann v. Taft*, 2006-Ohio-1825, ¶ 20. "To facilitate broader access to public records, a public office or the person responsible for public records shall organize and maintain public records in a manner that they can be made available for inspection or copying" upon request. R.C. 149.43(B)(2). Under R.C. 149.43(B)(1), "any person" may make such a request for public records, and "all

public records responsive to the request shall be promptly prepared and made available" for inspection, or copies must be provided "within a reasonable period of time" to the requester. A public office may deny "an ambiguous or overly broad request," or one that makes it impossible to "reasonably identify what public records are being requested," but must "provide the requester with an opportunity to revise the request by informing the requester of the manner in which records are maintained by the public office" before a final denial. *Id*. "If a request is ultimately denied, in part or in whole, the public office or the person responsible for the requested public record shall provide the requester with an explanation, including legal authority, setting forth why the request was denied." R.C. 149.43(B)(3). The Supreme Court of Ohio requires courts to "construe R.C. 149.43 liberally in favor of broad access, with any doubt resolved in favor of disclosure of public records." *Morgan* at ¶ 28, citing *Dann* at ¶ 20.

{¶ 9} Before the General Assembly enacted R.C. 2743.75 in 2016, a requester denied access to public records could only seek redress in the courts by filing a mandamus action under R.C. 149.43(C). However, R.C. 2743.75 "created an alternative means to resolve public-records disputes" in the Court of Claims. *Welsh-Huggins* at ¶ 11. The statute provides "an expeditious and economical procedure that attempts to resolve disputes alleging a denial of access to public records" apart from mandamus. R.C. 2743.75(A). To accomplish this goal, the statute lays out a streamlined litigation procedure that requires the requester file a form created by the Court of Claims as a complaint, with records of the request and any response attached, the immediate assignment of a special master who must, barring special circumstances, refer the matter to mediation and prepare a report and recommendations if mediation is unsuccessful. R.C. 2743.75(D)-(E). No motion practice is permitted unless permitted by the special master. R.C. 2743.75(E)(2). Nor is discovery permitted prior to the special master's report without permission, only affidavits and attached documentation. R.C. 2743.75(E)(3). Each party has seven days to object to the special master's report, another seven days to respond, and the Court of Claims must rule on the objections within seven days. R.C. 2743.75(F)(2).

{¶ 10} A requester denied access to public records may invoke the statutory procedure under R.C. 2743.75 in the Court of Claims or file a mandamus action. R.C. 149.43(C)(1). However, the requester may seek "only one" but "not both" remedies. *Id*.

Although the R.C. 2743.75 option "may be less formalistic than a mandamus proceeding," the remedies provided by either are "functionally the same," and therefore the standards applicable to both should be "consistent" with one another. *Welsh-Huggins*, 2020-Ohio-5371, at ¶ 32. Accordingly, "in a R.C. 2743.75 proceeding, the requester carries the burden of production to plead and prove facts showing that it 'sought an identifiable public record pursuant to R.C. 149.43(B)(1) and that the public office or records custodian did not make the record available.'" *Doe v. Ohio State Univ.*, 2024-Ohio-5891, ¶ 18 (10th Dist.), quoting *Welsh-Huggins* at ¶ 33. "Additionally, the burden of persuasion is on the requester to establish its entitlement to relief by clear and convincing evidence." *Id.*, citing *Viola v. Cuyahoga Cty. Prosecutor's Office*, 2021-Ohio-4210, ¶ 16 (8th Dist.).

### A. First Assignment of Error

{¶ 11} In the first assignment of error, the secretary's office argues that the Court of Claims "ignored" Mr. Brown's burden to prove that he was entitled to relief under R.C. 2743.75 by clear and convincing evidence. (Appellant's Brief at 8.) The special master did "not mention this burden at all" and the court "failed to explain" how Mr. Brown met the burden, according to the secretary's office. *Id.* at 10. Mr. Brown failed to "put in the record" any "evidence that shows or explains" why the criteria of his public records request was appropriate, the secretary's office argues, asserting that "actual evidence is required to meet the clear and convincing standard." *Id.* at 11. In response, Mr. Brown argues that his "only burden [was] to show" that the records he sought existed and were maintained by the secretary's office, who did not meet its "burden to establish the applicability of an exception" to its duty to provide the records. (Brief of Appellee at 4-5.)

{¶ 12} In *Welsh-Huggins*, the Supreme Court of Ohio explained "the respective burden or burdens of proof that the parties bear in proceedings to enforce the Public Records Act" brought under R.C. 2743.75. *Welsh-Huggins* at ¶ 19. In a preliminary passage, the court noted:

> We begin by recalling that the "burden of proof" is a composite burden that "encompasses two different aspects of proof: the burden of going forward with evidence (or burden of production) and the burden of persuasion." *Chari v. Vore*, 91 Ohio St.3d 323, 326, 2001-Ohio 49, 744 N.E.2d 763 (2001). *See also Xenia v. Wallace*, 37 Ohio St.3d 216, 219, 524 N.E.2d 889

(1988); *State v. Robinson*, 47 Ohio St.2d 103, 107, 351 N.E.2d 88 (1976).

The "burden of production" in a civil case requires that the plaintiff produce sufficient evidence to support the case and that the defendant produce sufficient evidence of any affirmative defenses. *Id.* at 107. The party having the burden on any given issue will lose on that issue as a matter of law if sufficient evidence is not produced. *Id.*

By contrast, the "burden of persuasion" "refers to the risk * * * borne by a party if the jury finds that the evidence is in equilibrium." *Id.* "In a civil case, the party with the burden of persuasion is to persuade the trier of fact by a preponderance of the evidence, or upon some issues, by clear and convincing evidence." *Id.* The party with this burden will lose if he or she fails to persuade the trier of fact that the alleged fact is true by such quantum of evidence as the law demands. *Id.* If the trier of fact finds itself in doubt, "it must decide the issue against the party having the burden of persuasion." *Id.*

*Welsh-Huggins* at ¶ 20-22.

{¶ 13} Applying these principles in an R.C. 2743.75 public records action, the court stated that "the complainant's 'burden of production' is to plead and prove facts showing that the requester sought an identifiable public record pursuant to R.C. 149.43(B)(1) and that the public office or records custodian did not make the record available." *Id.* at ¶ 33. In *Welsh-Huggins*, there was "no dispute" that the complainant had satisfied this burden of production. *Id.* The complainant was a reporter who requested a security camera recording of a common pleas court judge being shot as he entered the courthouse, and the public office, a county prosecutor, had denied the request. *Id.* at ¶ 1. And, "at all times" during the proceeding, the burden of persuasion was on the complainant "to prove his right to relief under R.C. 2743.75 by the requisite quantum of evidence," which he did not dispute was the clear and convincing standard. *Id.* at ¶ 34.

{¶ 14} However, it is not only the complainant who carries a burden of proof:

If the public office or person responsible for public records refuses to release the requested record on the basis of a statutory exemption, its "burden of production" in the R.C. 2743.75 proceeding is to plead and prove facts establishing that the requested record falls squarely within the exemption. *See State ex rel. Cincinnati Enquirer v. Jones-*

> *Kelly*, 118 Ohio St.3d 81, 2008-Ohio-1770, 886 N.E.2d 206, paragraph two of the syllabus. And if the exemption upon which the public office relies is not obviously apparent and manifest just from the content of the record itself, factual evidence to establish the application of that exemption is necessary. *See State ex rel. Besser*, 89 Ohio St.3d at 402, 732 N.E.2d 373. Unsupported conclusory statements in an affidavit are insufficient.

*Id.* at ¶ 35.

{¶ 15} In *Welsh-Huggins*, the prosecutor invoked the exception to public records disclosure that applies to "[a]ny record that contains information directly used for protecting or maintaining the security of a public office against attack, interference, or sabotage" under R.C. 149.433(B)(1). *Id.* at ¶ 42. However, the prosecutor's affidavits "asserted in conclusory fashion" that the video was used for such purposes, but they "did not explain *how* the video was used for protecting or maintaining the security of a public office against attack, interference, or sabotage." (Emphasis in original.) *Id.* at ¶ 55. This was insufficient to satisfy the burden of proof for invoking an exception to disclosure because "in a public-records-access proceeding brought pursuant to R.C. 2743.75, a public office or records custodian asserting a statutory exemption must produce competent, admissible evidence to support the asserted exemption unless the application of the exemption is clearly obvious from the record itself." *Id.* at ¶ 77.

{¶ 16} Here, Mr. Brown satisfied his burden of production "to plead and prove facts showing that the requester sought an identifiable public record pursuant to R.C. 149.43(B)(1) and that the public office or records custodian did not make the record available." *Id.* at ¶ 33. He did so by alleging that the public records request was submitted and "refused without proper basis for allegedly being 'overly broad,' " with reference to attachments containing his request and the response from the secretary's office. (Compl.)

{¶ 17} The secretary's office denied the request because it was purportedly "overly broad" under R.C. 149.43(B)(2), a statutory exemption to disclosure. This denial triggered "its 'burden of production' . . . to plead and prove facts establishing that the requested record falls squarely within the exemption." *Welsh-Huggins* at ¶ 35, citing *State ex rel. Cincinnati Enquirer*, 2008-Ohio-1770, paragraph two of the syllabus. *See also id.* at ¶ 54 (stating that "the assertion of a statutory exemption activates the corresponding burden of

production to prove facts establishing the clear applicability of the exemption"). In its briefing, the secretary's office makes no mention of its own burden or explains how the evidence it produced, the affidavit of Ms. Lawrence, established that the statutory exemption applied. After verifying attachments containing the parties' pre-litigation correspondence, her affidavit states:

> The Secretary of State's Office denied part one of Mr. Brown's request as overly broad. I explained that the Office was unable to respond because the request failed to identify both senders and recipients of the requested emails. Based on the way the Office organizes and maintains its email records, the Office is unable to efficiently search employee emails, even with a time parameter and search term, without an identified sender or recipient on each end of the emails. The Office must have both sender and recipient information to respond to a request for email records. The Office's records retrieval software has stalled when the Office attempted to run such broad searches in the past.

(Ex. A, Nov. 6, 2023 Resp. Brief, hereinafter, "Lawrence Aff.")

{¶ 18} We agree with the special master's observation that the statutory exemption to comply with an "overly broad" request under R.C. 149.43(B)(2) "nowhere authorizes an office to reject an otherwise clear request because of the limitations of the office's records management systems." (Report & Recommendation at 4.) Rather than fulfill its burden of production to produce competent, credible evidence showing that the exemption applies, the affidavit instead demonstrates noncompliance with the statute's mandate that secretary's office "shall organize and maintain public records in a manner that they can be made available for inspection or copying . . ." R.C. 149.43(B)(2); *Welsh-Huggins* at ¶ 77. "No pleading of too much expense, or too much time involved, or too much interference with normal duties, can be used by the respondent to evade the public's right to inspect and obtain a copy of public records within a reasonable time." *State ex rel. Beacon Journal Pub. Co. v. Andrews*, 48 Ohio St.2d 283, 289 (1976). *See also State ex rel. Toledo Blade Co. v. Seneca Cty. Bd. of Commrs.*, 2008-Ohio-6253, ¶ 36 (stating that "insofar as the e-mails still exist on the commissioners' computers, they remain public records, and the board has a duty to organize and maintain them in a manner in which they can be made available for inspection and copying").

{¶ 19} The secretary's office argues that Mr. Brown failed to present clear and convincing evidence that his request was "sufficiently clear," such as "evidence that shows or explains why eight months is a 'reasonable' date range" or "why the search term 'Blystone' is a 'topic' or 'subject matter.' " (Appellant's Brief at 11.) This echoes the prosecutor's argument in *Welsh-Huggins* that the requester must "first" satisfy the burden of proof to show "that he is entitled to that which he requests" with clear and convincing evidence. *Welsh-Huggins* at ¶ 54. This "argument wrongly suggests that [the] responding burden of production does not arise unless and until the requester has established its burden of persuasion." *Id.* The court further stated:

> Contrary to the prosecutor's contention, the assertion of a statutory exemption activates the corresponding burden of production to prove facts establishing the clear applicability of the exemption. The requester's burden of persuasion continues throughout the course of the proceeding but does not in any way relieve the public office or records custodian from having to prove the factual basis of the exemption on which it relies. The requester does not have to win its case before the public office has to make its case.

*Id.*

{¶ 20} The secretary's office argues that Mr. Brown's claim should fail because "actual evidence is required to meet the clear and convincing standard," citing *Anthony v. Columbus City Schools*, 2021-Ohio-3242, ¶ 2 (Ct. of Cl.). (Appellant's Brief at 11.) In *Anthony*, the requester sought a school district's records "of the number of teachers absent in each building each month and the number that had substitute coverage for the absences" during a three-year period. The school district submitted an affidavit stating it could not "produce a report in the manner requested" because the company that maintained its database "would have to create datasets" that in turn would "need to be manually manipulated to create a report" with the requested data, stating that "the requested monthly statistics are technically not a record the database was 'already programmed to produce.' " *Anthony* at ¶ 2, 11. The requester produced "no evidence or argument" to contradict the school district's "representations regarding availability of the requested dataset," and instead made "only a bare assertion that the requested output is available." *Id.* at ¶ 12. This was insufficient "to prove by clear and convincing evidence that the

requested output can be produced," so the school district had no duty to produce it. *Id*. at ¶ 13.

{¶ 21} *Anthony* involved the application of the "database rule," which applies when a requester does not seek existing records, but instead requests a compilation or report of data maintained in the database of a public office. *Id*. at ¶ 8. In that situation, "if an electronic database used by a public office has existing programming that can produce the output sought in a public records request, then that output already 'exists' for the purposes of the Public Records Act." *Id*. Here, in contrast, there is no dispute that the records in question, emails on the server at the secretary's office, actually exist. Furthermore, the special master in *Anthony* found that the requester had not satisfied her burden of proof *after* evaluating the school district's evidence, which included naming its data vendor, describing the datasets, and giving precise estimations of the number of reports that would have to be manually prepared by spreadsheet. *Id*. at ¶ 11.

{¶ 22} We cannot conclude that the affidavit submitted by Ms. Lawrence satisfied the burden of production that the secretary's office had to provide competent, credible evidence that the statutory exemption applied. Her affidavit makes a series of claims about the limitations of the search capabilities of the email software at the secretary's office, but does not even name the software used so that such claims may be evaluated or responded to. Furthermore, the assertions are somewhat contradictory. Ms. Lawrence asserts that "the Office is *unable to efficiently search* employee emails . . . without an identified sender or recipient on each end of the emails," and then, in the next sentence, asserts that "[t]he Office *must have both sender and recipient information to respond* to a request for email records." (Emphasis added.) (Lawrence Aff.) Either the secretary's office email system *must* have the sender and recipient, or it *can* do the search without them, albeit not "efficiently." Both cannot be true. In addition, by asserting that its "records retrieval software has stalled when the Office attempted to run such broad searches in the past," it is apparent that no attempt was made to procure the emails at all. *Id*. It is impossible to compare Mr. Brown's request to these past searches because no details about them are provided.

{¶ 23} As stated, the secretary's office had the burden of production when claiming that it was not required to produce the emails. "The party having the burden on any given

issue will lose on that issue as a matter of law if sufficient evidence is not produced." *Welsh-Huggins* at ¶ 21, citing *State v. Robinson*, 47 Ohio St.2d at 107. Because the secretary's office failed to satisfy its burden to produce evidence in support of the asserted statutory exemption under R.C. 149.43(B)(2), it lost on that issue as a matter of law. Mr. Brown, having satisfied his burden of production, was not required to then produce more evidence to demonstrate that he was entitled to the records. Having shown that he requested existing records, R.C. 149.43(B)(1) required the secretary's office to provide them. The first assignment of error is overruled.

### B. Second Assignment of Error

{¶ 24} In the second assignment of error, the secretary's office argues that the Court of Claims erred by not concluding that Mr. Brown's request was overly broad. Much of what the secretary's office asserts in support of this assignment of error is duplicative of its arguments in support of the first assignment of error, such as its assertion that Mr. Brown failed to provide evidentiary support for the reasonableness of the criteria of his request or properly rebut the affidavit of Ms. Lawrence. (*See* Appellant's Brief at 15-16, 19-23.) These arguments will not be addressed, given our resolution of the first assignment of error.

{¶ 25} To the extent that the secretary's office argues that the parameters of Mr. Brown's request were insufficiently precise, we cannot conclude that a request for emails during one eight-month period containing a single keyword ("Blystone") of one public office qualifies as overly broad. Mr. Brown "limited each request temporally, by subject matter, and in all but one instance, by the specific employees concerned." *State ex rel. Kesterson v. Kent State Univ.*, 2018-Ohio-5110, ¶ 23-25 (rejecting university's assertion that requests for " 'all records of communications' between various individuals" as overly broad). Mr. Brown did not request "broad categories of records," only emails, and his request did not encompass "a lengthy period of time" relative to other requests considered overly broad. *See, e.g., State ex rel. Zidonis v. Columbus State Community College*, 2012-Ohio-4228, ¶ 21 (holding that request for "complaint files and litigation files" over "at least six years and potentially much longer" was overbroad). As formulated, his request had the "reasonably clarity" required to resist categorization as overly broad. *Id.* Accordingly, the second assignment of error is overruled.

## IV. Conclusion

{¶ 26} Having overruled the two assignments of error asserted by the secretary's office, we affirm the judgment of the Court of Claims of Ohio adopting the report and recommendation of the special master.

*Judgment affirmed.*

JAMISON, P.J. and BEATTY BLUNT, J., concur.

————————————